IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

KIM K. SUMNER,

     Plaintiff,

v.                                          CIVIL ACTION NO. 1:13-cv-00539

MARYLAND JUDICIARY /
DISTRICT COURT OF MARYLAND,

AND

STATE OF MARYLAND

     SERVE:

     Hon. Douglas F. Gansler,
     Attorney General of Maryland
     200 St. Paul Place, 20th Floor
     Baltimore, MD 21202

AND

HON. BEN C. CLYBURN,
 Individually and in his
 Official Capacity as
Chief Judge
District Court of Maryland
Robert C. Murphy Courts of Appeal Bldg.
361 Rowe Boulevard
Annapolis, Maryland 21401,

AND

-1-

**HON. JOHN R. HARGROVE, JR.,**
**individually and in his**
**official capacity as**
**Associate Judge (and Former Administrative Judge)**
**District Court of Maryland, District 1**
**5800 Wabash Avenue**
**Baltimore, MD 21215**

**AND**

**HON. KEITH E. MATHEWS,**
**individually and as**
**a Visiting Judge**
**District Court of Maryland,**
**District 1**
**5800 Wabash Avenue**
**Baltimore, MD 21215**

**AND**

**MARY ABRAMS,**
**individually and in her**
**Official Capacity as**
**Administrative Clerk**
**District Court of Maryland,**
**District 1**
**5800 Wabash Avenue**
**Baltimore, MD 21215**

**AND**

**ANGELA NAYLOR,**
**individually and in her**
**Official Capacity as**
**Division Chief**
**District Court of Maryland,**
**District 1**
**5800 Wabash Avenue**
**Baltimore, MD 21215,**

**AND**

**LONNIE FERGUSON,**
 **in his individual capacity**
**C/o District Court of Maryland,**
**District 1**
**5800 Wabash Avenue**
**Baltimore, MD 21215**

**AND**

**LAVONE GRANT,**
 **in her individual capacity**
**8 Devlon Court**
**Owings Mills, MD 21117**

       **Defendants.**

o0o

### PROPOSED AMENDED COMPLAINT WITH PRAYER FOR JURY TRIAL[1]

Plaintiff, Kim K. Sumner, by her undersigned attorney, sues the State of Maryland; the

Maryland Judiciary and its organizational component, the District Court of Maryland, as

agencies, instrumentalities, and/or *alter egos* of the State  of Maryland; Hon. Ben C. Clyburn,

Hon. John R. Hargrove, Jr., Hon. Keith E. Mathews, Mary Abrams, and Angela Naylor – each in

---

[1]  In her motion for leave to amend that is filed herewith, Plaintiff requests to be relieved
of the requirement of Local Rule 103.6(c) that changes from the original pleading – in this case,
Plaintiff's *pro se* initial complaint – be identified in the proposed amendment to that pleading.
Here, the proposed amended complaint incorporates none of the verbiage in the initial complaint,
and thus compliance with the foregoing Rule would require that the entirety of the instant paper
be set forth in bold-faced type or underlined, and that would serve no purpose. The text of Local
Rule 103.6(c) is as follows:

LR 103.6(c).  Identification of Amendments

Unless otherwise ordered by the Court, the party filing an amended pleading shall
file and serve (1) a clean copy of the amended pleading and (2) a copy of the
amended pleading in which stricken material has been lined through or enclosed
in brackets and new material has been underlined or set forth in bold-faced type.

his or her individual capacity and in his or her official capacity as an official of the Maryland

Judiciary occupying a senior administrative position within the Defendant District Court of

Maryland; and Lonnie Ferguson and Lavone Grant in their individual capacities.

**A. Preliminary statement.**

    1.  Plaintiff seeks to redress and remedy the following wrongs:

        i.  A continuing violation by the Defendant State of Maryland and its component

agencies and instrumentalities, *viz.,* the Defendant Maryland Judiciary and the Defendant District

Court of Maryland, of the antidiscrimination and antiretaliation provisions of Title VII of the

Civil Rights Act of 1964, as amended ("Title VII", hereinafter), which culminated in the

constructive discharge of Plaintiff from the employ of the Defendant State of Maryland.

        ii.  A continuing violation,  under color of State law, by the individual Defendants

Ferguson, Grant, Naylor, Hargrove, Clyburn, and Abrams of the equal protection guarantee of the

14th Amendment to the U.S. Constitution, against discrimination on the basis of gender and/or

race, which violation Plaintiff seeks to redress via the Civil Rights Act of 1871, now codified at

42 U.S.C. § 1983.

        iii.  A continuing violation,  under color of State law, by the individual Defendants

Ferguson, Grant, Naylor, Hargrove, Clyburn, and Abrams of the prohibition against

discrimination on the basis of race that is set forth in the Civil Rights Act of 1866, now codified

at 42 U.S.C. § 1981.

        iv.  A continuing violation,  under color of State law, by the individual Defendants

named herein of the guarantees of free expression and the right to petition the government to

redress grievances that are guaranteed by the First and 14th Amendments to the U.S. Constitution, as vindicated by 42 U.S.C. § 1983.

v.  A conspiracy entered into an furthered by the individual Defendants Ferguson, Grant, Naylor, Hargrove, Clyburn, and Abrams to engage in a continuing violation of the guarantees of free expression and the right to petition the government to redress grievances that are provided by the First and 14th Amendments to the U.S. Constitution, as vindicated by 42 U.S.C. § 1983.

vi.  A conspiracy entered into and furthered by individual Defendants named herein to perpetrate and perpetuate the above-described continuing violations of pertinent legal and Constitutional protections, in violation of 42 U.S.C. § 1985(3), as a means of furthering these Defendants' purely personal and private interests arising from an animus against women and white persons as classes or an illicit motive to cover up and perpetuate purposefully and invidiously discriminatory treatment of women and white persons as classes, with no intention to further any legitimate public or governmental interest, and with no resultant furthering of any legitimate public or governmental interest.

vii.  Knowing, purposeful, and culpable neglect by Defendant Hargrove of the above-described conspiracy, in violation of 42 U.S.C. § 1986.

viii.  Knowing, purposeful, and culpable neglect by Defendant Clyburn of the above-described conspiracy, in violation of 42 U.S.C. § 1986.

ix.  Knowing, purposeful, and culpable neglect by Defendant Clyburn of the above-described conspiracy, in violation of 42 U.S.C. § 1986.

**B. Jurisdiction and venue.**

2.  Plaintiff hereby invokes this court's jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 (federal question and civil rights, respectively), as well as the jurisdiction provided by the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-5(f)(3), to secure a just adjudication of the claims raised herein.   All jurisdictional prerequisites for the prosecution in the instant forum of Plaintiff's Title VII claim were satisfied by Plaintiff's filing of a charge of discrimination on the basis of gender, race, and opposition to unlawful discrimination (retaliation) with the U.S. Equal Employment Opportunity Commission ("EEOC", hereinafter) and her receipt from the EEOC of a Notice of Right to Sue less than 90 days prior to her filing of the initial complaint herein.  Venue is premised on the occurrence within the federal judicial district of Maryland, Northern Division, of all acts and omissions complained of herein.

**C. Parties.**

3.  Plaintiff is a competent adult female resident of Carroll County, MD, and at all times pertinent hereto through on or about January 3, 2014, was an employee of the Defendant State of Maryland assigned to District 1 of the Defendant District Court of Maryland, which serves Baltimore City (" District 1", hereinafter).  Plaintiff is white.

4.  The Defendant State of Maryland is sovereign governmental entity created by the Constitution of 1776 and perpetuated by superseding instruments of equal import adopted by direct vote of its voters.   The Defendant Maryland Judiciary is the Judicial Branch of the Defendant State of Maryland and is presided over and superintended by the incumbent Chief Judge of the Court of Appeals of Maryland, who, as provided by the Maryland Constitution, is appointed by the Governor of Maryland.  In accord with the Maryland Constitution, the Defendant District Court of Maryland is an organizational component of the Defendant Maryland

Judiciary and is presided over by a Chief Judge appointed by the Chief Judge of th Court of

Appeals of Maryland.

     5.  Defendant Keith E. Mathews ("Defendant Mathews", hereinafter) served as an

associate judge in District 1 of the Defendant District Court of Maryland from December 12,

1983, through on or about January 1, 1999, and then served as administrative judge from on or

about January 2, 1999, through March 2, 2010.  Defendant Mathews is a black male.

     6.  Defendant Ben C. Clyburn ("Defendant Clyburn", hereinafter) has served as Chief

Judge of the District Court of Maryland since December 29, 2004, and previously served as an

associate judge in District 1 from February 3, 1995, until December 28, 2004.  Defendant

Clyburn served as an associate judge in District 1 during the tenure of Defendant Mathews as an

associate judge in District 1 and also during the tenure of Defendant Mathews as Administrative

Judge in District 1.  Defendant Clyburn is a black male.

     7.  Defendant John R. Hargrove, Jr. ("Defendant Hargrove", hereinafter) was the

administrative judge for District 1 of the Defendant District Court of Maryland from March 3,

2010, through on or about September 29, 2013, when he resumed serving as an associate judge in

District 1.  Defendant Hargrove had previously served as an associate judge from July 21, 1998,

through March 2, 2010.  Defendant Hargrove served as an associate judge during the tenure of

Defendant Mathews as administrative judge for District 1 of the Defendant District Court of

Maryland.  Defendant Hargrove is a black male.

     8.  Defendant Mary Abrams was appointed Administrative Clerk of District 1 of the

Defendant District Court of Maryland and commenced working in that capacity on or about

November 18, 2013, and thus succeeded Defendant Ferguson in that position.  Defendant

Abrams is a black female.

9. Defendant Lonnie Ferguson ("Defendant Ferguson", hereinafter) was at all times pertinent hereto until his retirement on or about November 1, 2013, the Administrative Clerk of District 1 of the Defendant District Court of Maryland. In his capacity as Administrative Clerk, Defendant Ferguson was the senior administrative employee, except for the administrative judge, of the Defendant District Court of Maryland assigned to District 1.  Defendant Ferguson is a black male.

10.  Defendant Lavone Grant was at all times pertinent hereto until on or about October 8, 2013, the deputy Administrative Clerk of District 1.  In her capacity as Deputy Administrative Clerk as aforesaid, Defendant Grant was the second-ranking administrative employee after Defendant Ferguson, her direct superior until on or about October 18, 2013, of the Defendant District Court of Maryland assigned to District 1.  Defendant Grant is a black female.

11.  In late 2010, Defendant Angela Naylor ("Defendant Naylor", hereinafter) was promoted to the position of division chief in District 1 of the Defendant District Court of Maryland, and at all pertinent times thereafter she continued to serve in the aforesaid position. As division chief, Defendant Naylor supervised all administrative employees assigned to the Edward R. Borgerding Courthouse at 5800 Wabash Avenue, Baltimore.   Until on or about November 1, 2013, Defendant Naylor was a direct subordinate of Defendant Ferguson and subsequently, upon Defendant Ferguson's retirement from the employ of the Defendant State of Maryland, a direct subordinate of Defendant Abrams.

**D.  Statement of facts common to all counts.**

12.  Defendants Mathews and Ferguson have a history of personal misconduct involving

female subordinates and abuses of the powers of their respective (former) offices as described hereinafter, including their entering into an agreement and conspiracy with each other to perpetuate and avoid being held accountable for that misconduct.  The history of misconduct by Defendants Mathews and Ferguson demonstrates that they were unable and/or unwilling to implement and/or enforce legal protections of the rights of female employees of the Defendant State of Maryland and/or the Defendant District Court of Maryland to be free of sexual harassment and gender discrimination and similar protections promulgated by the Defendant Maryland Judiciary and/or the Defendant District Court of Maryland.  Defendants Hargrove, Clyburn, and Grant have a lengthy history of culpable acquiescence to the aforesaid misconduct of Defendants Mathews and Ferguson.  Defendants Hargrove, Clyburn, Ferguson, Grant, Naylor, and Abrams retaliated against Plaintiff for her opposition to the aforesaid misconduct of Defendant Ferguson.   The above-described history of misconduct by Defendants Mathews and Ferguson, the knowing and culpable acquiescence by Defendants Clyburn, Hargrove, and Grant to the misconduct of Defendants Mathews and Ferguson, and the purposeful support by Defendants Clyburn, Hargrove, Grant, Naylor, and Abrams of that misconduct by engaging in unlawful retaliation as aforesaid – combined with Plaintiff's knowledge of the foregoing history, acquiescence, and support – resulted in the creation and perpetuation of a hostile environment that attended the employment of Plaintiff within the Defendant District Court of Maryland and caused the constructive discharge of Plaintiff from the employ of the Defendant State of Maryland.

13.  During his tenure as associate judge and his tenure as Administrative Judge in District 1 of  the Defendant District Court of Maryland as aforesaid, Defendant Mathews, who

was married, engaged in relationships with female employees of the District Court of Maryland that were not consistent with or otherwise based on any legitimate employment-related factor or purpose.  At least some of the above-described relationships, between Defendant Mathews and female subordinates during his tenure as an associate judge as aforesaid, were sexual and/or romantic in nature, and/or were perceived by other employees of the Defendant District Court of Maryland as sexual and/or romantic and/or adulterous.

14.  One or more of the above-described relationships, between Defendant Mathews and female subordinates during his tenure as administrative judge, were induced and/or perpetuated by Defendant Mathews by exploiting and/or abusing the powers of his position within the Defendant District Court of Maryland, including but not limited to the power to effect or procure personnel selections and/or assignments or other advancements or enhancements of employment interests .

15.  By engaging in the above-described sexual and/or romantic relationships with female subordinates and effecting or procuring, substantially on the basis of such relationships, the advancement and/or enhancement of the employment-related interests of the female subordinates who engage in sexual and/or romantic relationships with him, Defendant Mathews perpetrated *quid-pro-quo* sexual harassment and/or unlawful discrimination – on the basis of race, gender, age, marital status, and/or other nonmerit factors – against qualified individuals who, as a consequence of the above-described discrimination and/or the unjustified  advancement of subordinate females who engaged in sexual and/or romantic relationships with Defendant Mathews, were denied the advancement of their employment interests to which they were entitled by reason of their legitimate qualifications.

16.  The above-described conduct by Defendant Mathews – specifically his engagement in sexual and/or romantic relationships with female subordinates and the abuse and/or exploitation of his administrative authority in effecting and/or procuring advancements and/or enhancements of the employment-related interests of the female subordinates who had engaged in such sexual and/or romantic relationships with Defendant Mathews the basis of nonmerit factors – constituted a violation of the ethical standards applicable to Defendant Mathews and all other Maryland judges.

17.  During his tenure as District 1 administrative judge as aforesaid, Defendant Mathews was urged by a subordinate male supervisor to halt and/or curtail the above-described unethical behavior of Defendant Mathews so as to avoid the continued appearance of impropriety. Defendant Mathews responded by stating, "I don't give a fuck" about the impact of his above-described improper behavior, which continued undiminished after the above-described communication with the subordinate male supervisor.  Defendant Mathews was fully aware that his above-described behavior with respect to female subordinates was unethical and unlawful, but failed to halt that behavior.

18.  During his tenure as administrative judge in and for District 1 of the Defendant District Court of Maryland, Defendant Mathews knowingly permitted Defendant Ferguson to engage in relationships with female subordinates that were not consistent with or otherwise based on any legitimate employment-related factor or purpose.  At least some of the above-described relationships, between Defendant Ferguson and female subordinates, were sexual and/or romantic in nature, and/or were perceived by other employees of District 1 of the District Court f Maryland as sexual and/or romantic.  At least some of the above-described relationships,

between Defendant Ferguson and female subordinates, were induced and/or perpetuated by

Defendant Ferguson by exploiting and/or abusing the powers of his position within the

Defendant District Court of Maryland, including but not limited to the power to effect or procure

advancements and/or enhancements of the employment-related interests of those female

subordinates who engaged in sexual and/or romantic relationships with Defendant Ferguson.

19.   By engaging in one or more of the above-described relationships and effecting or

procuring, substantially on the basis of such relationships, advancements and/or enhancements of

the employment-related interests of the female subordinates who participated in sexual and/or

romantic relationships with him, Defendant Ferguson perpetrated *quid-pro-quo* sexual

harassment, and/or unlawful discrimination – on the basis of race, gender, age, marital status,

and/or other nonmerit factors – against qualified individuals who, as a consequence of the

unjustified advancements and/or enhancements of the employment-related interests of

subordinate females who engaged in sexual and/or romantic relationships with Defendant

Ferguson, were denied the advancements of their employment interests that they deserved and for

which they were fully qualified.

20.   Female employees of the Defendant District Court of Maryland, as well as female

applicants for such employment, who engaged in sexual and/or romantic relationships with

Defendant Mathews and/or Defendant Ferguson as aforesaid realized advancements and/or

enhancements of their employment-related interests because of such sexual and/or romantic

relationships and/or because of their race, black, or other nonmerit factors.  Defendant Mathews

and/or Defendant Ferguson effected, procured, recommended, or otherwise supported such

advancements and/or enhancements.  Either or both Defendant Mathews and Defendant Ferguson

could have prevented or curtailed such appointments, but chose not to do so.

21. During his tenure as Administrative Judge of District 1 as aforesaid, Defendant Mathews personally procured the advancement of the employment interests of a woman, "T.W.", with whom he was engaging in a sexual relationship.  At the time their sexual relationship commenced, T.W. was serving as a bailiff in District 1 of the Defendant District Court of Maryland.  As a bailiff, T.W. was a "contract" employee, without such benefits as paid leave and holidays or health insurance.  Solely or substantially because of his sexual relationship with T.W., Defendant Mathews procured the appointment of T.W. to a permanent position, with full fringe benefits, in District 1 of the Defendant District Court of Maryland.  Defendant Mathews' procurement of the aforesaid appointment of T.W. constituted *quid-pro-quo* sexual harassment and/or unlawful discrimination on the basis of age, race, gender, marital status, and/or other nonmerit factors and violated the standards of judicial ethics applicable to Defendant Mathews and all other Maryland judges. Defendant Mathews' procured the appointment or advancement of other female subordinates who engaged in sexual and/or romantic relationships with him.

22.  As a direct and proximate result of the above-described personnel practices of Defendant Mathews and Defendant Ferguson, employees of Defendant District Court of Maryland assigned to District 1 viewed the personnel practices in District 1 as corrupt and/or discriminatory.  The above-described behavior of Defendants Mathews and Ferguson – in which they engaged in sexual and/or romantic relationships with female subordinates and effected and/or procured advancements and/or enhancements of the employment-related interests of the women who engaged in such relationships with them or either of them – created a perception and belief among the employees of the Defendant District Court of Maryland assigned to District 1

that the mst certain means of advancing in their employment interests was to engage in a sexual and/or romantic relationship with Defendant Mathews and that employees could not rely on their qualifications and conscientiousness to advance in their employment within the Defendant District Court of Maryland.  As a direct and proximate result of the above-described personnel practices of Defendant Mathews and Defendant Ferguson, the efficiency of the work force of District 1 of the Defendant District Court of Maryland and the reliability of its work product were diminished, relative to the efficiency and reliability of the work force and work product of other districts within the Defendant District Court of Maryland.

23.   During their long-standing relationship Defendant Mathews and Defendant Ferguson agreed – as signified by their words and/or conduct and/or pattern of conduct – that each could and would engage in sexual and/or romantic relationships with female subordinates without any complaint or objection by the other, and that each of these Defendants, with the support of the other, could and would exploit and/or abuse the powers of his position within the Defendant District Court of Maryland to induce and/or perpetuate such relationships by advancing and/or enhancing the employment interests of women with whom either or both Defendant Mathews and Defendant Ferguson had sexual and/or romantic relationships.  Defendants Mathews and Ferguson further agreed – as signified by their words and/or actions and/or pattern of conduct – that they and each of them could and would promote and/or procure advancements and/or enhancement of the employment interests of women who had engaged, or were engaging, in sexual and/or romantic relationships with either or both of them and who were unqualified or not the most qualified for the positions and/or other benefits for which they were selected.  The result and effect of the aforesaid agreement between Defendants Mathews and Ferguson was that

women wh engaged in sexual and/or romantic relationships with either or both of these

Defendants were selected for employment-related advancements and/or enhancements for which

other candidates, who are male or women had not engaged in sexual or romantic relationships

with either or both Defendants Mathews and Ferguson, were more qualified on the basis of merit.

24.   The above-described agreement between Defendants Mathews and Ferguson

constituted a conspiracy to perpetrate and knowingly permit the perpetration of *quid-pro-quo*

sexual harassment and/or unlawful discrimination on the basis of gender, age, race, marital

status, and/or other nonmerit factors.   The above-described conspiracy was entered into by

Defendants Mathews and Ferguson for the sole purpose of advancing and satisfying the purely

personal and prurient interests of each of them in creating and maintaining a regime in District 1

of the Defendant District Court of Maryland that allowed both Defendant Mathews and

Defendant Ferguson to engage in *quid-pro-quo* sexual harassment and other forms of unlawful

discrimination on the basis of gender.   Thus the overarching purpose of the aforesaid conspiracy

was to target women for discriminatory treatment, but with a further discriminatory impact upon

males, in that males were unlawfully and discriminatory disadvantaged because their gender

excluded them from consideration for advancement.   The aforesaid conspiracy in no way

furthered, and was never intended to further, any legitimate public interest or any legitimate

interests of the Defendants State of Maryland, Maryland Judiciary, or the District Court of

Maryland.

25.   The above-described pattern of conduct by Defendant Mathews during his tenure as

aforesaid as administrative judge, including Defendant Mathews' practice of allowing Defendant

Ferguson to engage in sexual and/or romantic relationships with female subordinates and to

exploit and abuse the powers of his office to effect or procure the advancement and/or

enhancement of the employment interests of women who engaged in sexual and/or romantic

relationships with Defendant Ferguson, constituted a violation of the ethical standards for

Maryland judges, including Defendant Mathews, and was fully known by Defendant Mathews to

constitute such a violation.

26.   Defendant Mathews and Defendant Ferguson engaged in a pattern of personnel

actions in which they discriminatorily favored African-American candidates for employment or

other advancements or enhancements of employment interests within the Defendant District

Court of Maryland.  By acting in concert to further their purely personal goals and knowingly and

purposefully engaging in a pattern of racially discrimination personnel selections and

advancements and/or enhancements of employment interests as aforesaid, Defendant Mathews

and Defendant Ferguson entered into a conspiracy to violate the legal and constitutional rights of

nonblack individuals who sought employment, promotion, or other employment-related

advancements or benefits within District 1 of the Defendant District Court of Maryland and who

were more qualified than the successful black competitors for the same employment-related

advancements or benefits.  In furtherance of the above-described conspiracy to discriminate

against nonblack individuals, Defendants Mathews and Ferguson knowingly and purposefully

allowed and encouraged subordinate supervisors to discriminate against nonblack candidates for

employment and promotion and in other aspects of personnel management within District 1.

27.   The above-described conspiracy between Defendants Mathews and Ferguson and the

acts unlawfully perpetrated and/or knowingly and unlawfully allowed by them or either of them

in furtherance of the above-described conspiracy, as those acts are described herein, were so

flagrant and notorious as to create a hostile environment that altered the terms and conditions of the employment of a substantial proportion of the District 1 work force, in that:

   i.  A substantial number of employees of the Defendant State of Maryland assigned to District 1 were caused to believe that personnel management decisions were made on the basis of factors other than merit or that such decisions were strongly influenced by factors other than merit.

   ii.  A substantial number of employees of the Defendant State of Maryland assigned to District 1 were caused to believe that Defendants Mathews and Ferguson could and did abuse with impunity the authority of their respective offices to subvert merit principles in matters of personnel management within District 1.

   iii.  A substantial number of employees of the Defendant State of Maryland assigned to District 1 were caused to believe that there was no reliable mechanism for redressing serious inequities in connection with matters of personnel management within District 1.

  28. During the tenure of Defendant Mathews as administrative judge of District 1 of the Defendant District Court of Maryland as aforesaid, Defendant Ferguson perpetrated improper acts that were highly offensive to two or more female subordinate employees, which acts were reported in separate complaints of sexual harassment to the Defendant Maryland Judiciary's Office of Fair Practices, and were deemed by the latter office to constitute sexual harassment and/or a violation of the applicable standard of conduct established by the Defendant District Court of Maryland and/or the Defendant Maryland Judiciary.  As a proximate and direct result of his above-described acts and the investigations that ensued, Defendant Ferguson was suspended from his subject employment without pay on at least two separate occasions.  But for Defendant

Ferguson's race (African American), his decades-long personal friendships with Defendants Mathews and Clyburn, and the above-described agreement and conspiracy between Defendants Mathews and Ferguson, Defendant Ferguson would have been permanently removed, either by discharge or demotion, from the position of Administrative Clerk within the Defendant District Court of Maryland as a disciplinary sanction for his repeated improper conduct that was highly offensive to two or more of subordinate female employees.  On information and belief, Defendant Ferguson was warned that repetition of his misconduct could result in termination of his employment by the Defendant District Court of Maryland.

29.  Prior to her retirement in 1999, then District 1 Administrative Judge Mary Ellen T. Rinehardt attempted to remove Defendant Ferguson from the position of Administrative Clerk because of his misconduct described herein, but her attempt was unsuccessful.  On information and belief, Administrative Judge Rinehardt sought to oust Defendant Ferguson from the position of Administrative Clerk as a sanction for the misconduct of Defendant Ferguson that is described herein.

30.  At no time has Defendant Mathews or Defendant Ferguson withdrawn from or repudiated the above-described agreement and conspiracy.  The results and effects of the aforesaid conspiracy have continued after the respective retirements of Defendants Mathews and Ferguson and can reasonably be expected to continue until or unless meaningful remedial measures are undertaken by the leadership of the Defendant Maryland Judiciary / District Court of Maryland.  Defendant Mathews had and continues to have a substantial incentive and motivation not to repudiate or report to authorities the above-described conspiracy, in that so long as the above-described conspiracy is not reported or otherwise known officially to the

leadership of the Defendant Maryland Judiciary, Defendant Mathews is and remains eligible to

serve as a temporary judge and to receive substantial compensation for that service.  Defendant

Mathews has been and continues to be substantially motivated not to repudiate or report the

above-described conspiracy in order to avoid being charged and sanctioned for judicial

misconduct.

**E.  Defendant Hargrove's knowledge of misconduct of Defendants Mathews and Ferguson and failure to seek to curtail or otherwise redress that misconduct.**

31.  During his tenure as an associate judge as aforesaid, Defendant Hargrove was aware

of the above-described conduct of Defendants Mathews and Ferguson and was aware specifically

of the following practices of Defendants Mathews and Ferguson and the impact of those

practices:

i.  Defendants Mathews and Ferguson perpetrated *quid-pro-quo* sexual harassment

and/or gender discrimination by engaging in sexual and/or romantic relationships with their

female subordinates and exploiting and/or abusing the powers and prestige of their respective

positions, including but not limited to the power to effect promotions and other advancements

and/or enhancements of interests related to employment by or within the Defendant District

Court of Maryland, to induce and encourage female subordinates to enter into and participate in

such relationships;

ii.  A substantial number of employees of the Defendant District Court of

Maryland assigned to District 1 believed, based upon the overt behavior of Defendant Mathews

and Defendant Ferguson and accounts of that behavior that were disseminated among the District

1 work force, that Defendant Mathews and Defendant Ferguson engaged in sexual and/or

romantic relationships with their female subordinates;

      iii.  The above-described conduct of Defendant Mathews and his knowingly allowing Defendant Ferguson to engage in similar conduct created and perpetuated the appearance of impropriety.

      iv.  Female subordinates who engaged in the above-described sexual and/or romantic relationships were promoted or otherwise realized advancements or enhancements of their employment-related interests because they had engaged, or were engaging, in such relationships rather than on the basis of their legitimate qualifications for such advancements or enhancements in their employment-related interests; and

      v.  The above-described advancement or enhancement of employment-related interests of female employees of the Defendant District Court of Maryland who had engaged in sexual and/or romantic relationships with either or both Defendant Mathews and Defendant Ferguson resulted in the most qualified candidates for promotion or other advancements or enhancements of their  employment-related interests being unlawfully denied advancement and/or enhancement of their employment-related interests because they had not engaged in such relationships with Defendant Mathews or Defendant Ferguson or because of their gender.

32.  During his initial tenure as an associate judge as aforesaid, Defendant Hargrove knew that the above-described behavior of Defendant Mathews created and perpetuated an appearance of impropriety in violation of the ethical standards for all Maryland judges, including specifically the standard of judicial conduct now codified as Rule 1.2(5) of the Maryland Code of Judicial

Conduct, Maryland Rule 16-813, which prohibits judicial conduct that creates or perpetuates an appearance of judicial impropriety and which was fully effective, at least in substance, at all times pertinent hereto.

33.  During his initial tenure as an associate judge as aforesaid, Defendant Hargrove took no action to halt or curtail Defendant Mathews' practice of engaging in sexual and/or romantic relationships with Defendant Mathews' female subordinates or Defendant Mathews' practice of exploiting and abusing the power of his position within the Defendant District Court of Maryland to induce and perpetuate such relationships as aforesaid by effecting or procuring advancements and/or enhancements in the employment-related interests of those female subordinates who were invited to engage in such sexual and/or romantic relationships with Defendant Mathews. Or those female subordinates who actually engaged in such sexual and/or romantic relationships with Defendant Mathews.

34.  During his initial tenure as an associate judge as aforesaid, Defendant Hargrove was aware that Defendant Mathews knowingly allowed Defendant Ferguson to engage in sexual and/or romantic relationships with female subordinates and that Defendant Mathews knowingly allowed Defendant Ferguson to exploit or abuse the power and prestige of Defendant Ferguson's office, including but not limited to the power to effect or procure promotions or other advancements or enhancements of employment-related interests of his subordinates, to induce female subordinates to enter into and/or participate in such sexual and/or romantic relationships.

35.  During his initial tenure as an associate judge as aforesaid, Defendant Hargrove was aware that Defendant Mathews knowingly allowed Defendant Ferguson to engage in conduct that was unethical for Defendant Mathews to engage in and that Defendant Mathews' allowing

Defendant Ferguson to engage in such conduct constituted a violation of the ethical standards for all Maryland judges.

36.   Defendant Hargrove took no action to halt or prevent Defendant Mathews from knowingly allowing Defendant Ferguson to engage in conduct – inducing and participating in sexual and/or romantic relationships with female subordinates and exploiting and abusing the power of his office to initiate and perpetuate such relationships – that was unethical for Defendant Mathews to engage in.

37.   During his tenure as an administrative judge as aforesaid, Defendant Hargrove knowingly allowed Defendant Ferguson to engage in conduct – inducing and participating in sexual and/or romantic relationships with female subordinates and exploiting and abusing the powers of his office, including the power to effect and/or procure promotions or other advancements or enhancements of employment-related interests of the female subordinates of Defendant Ferguson who engaged in sexual and/or romantic relationships with Defendant Ferguson – that was unethical for Defendant Hargrove to engage in.  Defendant Hargrove's knowingly allowing Defendant Ferguson to engage in such conduct constituted a violation of the ethical standards for all Maryland judges.

38. On at least two occasions during his tenure as an administrative judge as aforesaid, Defendant Hargrove procured the selections of individuals for employment within District 1 of the Defendant District Court of Maryland who were unqualified for such employment because of their criminal backgrounds.  Defendant Hargrove effected and/or procured such appointments of unqualified individuals because of their race and/or the personal friendships and/or relationships of such individuals and not because of their relevant qualifications for such appointments.  This

practice was a violation of the ethical standards for all Maryland judges.

39. During his tenure as Administrative Judge as aforesaid, Defendant Hargrove was aware of the above-described, continuing conspiracy between Defendants Mathews and Ferguson and the continuing effects of that conspiracy that prevented, undermined, and/or compromised lawful reliance upon merit principles in District 1 personnel management and thus perpetuated a hostile work environment for at least a substantial proportion of the District 1 work force as aforesaid. Defendant Hargrove was aware that the above-described conspiracy between Defendants Mathews and Ferguson furthered no legitimate interests, but was instead a means by which Defendants Mathews and Ferguson sought only to further their own personal and nefarious interests in perpetuating a regime of discrimination upon the class of females who were subjected to *quid-pro-quo* sexual harassment and the class of males and females whose qualifications for advancement and/or enhancement of their employment-related interests were not considered because they were not candidates for sexual and/or romantic relationships with their superiors. Defendant Hargrove had authority, as Administrative Judge, to redress and cure, at least prospectively, the rampant repudiation and/or disregard of merit principles in District 1 personnel management that had a purposeful and continuing discriminatory impact as aforesaid. Defendant Hargrove knowingly and purposefully failed and refused to exercise his administrative and managerial authority to redress the above-described continuing conspiracy and its purposefully discriminatory impact upon the above-described classes.

**F.  Failure by Defendant Clyburn to stop or redress the above-described misconduct of Defendants Mathews and Ferguson; neglect by Defendant Clyburn of conspiracy that he had power and authority to stop and redress.**

40.   During his tenure as an associate judge in District 1 and his tenure as Chief Judge of the Defendant District Court of Maryland as aforesaid, Defendant Clyburn was aware of the above-described misconduct by Defendants Mathews and/or Ferguson – specifically their practice of engaging in sexual and/or romantic relationships with female subordinates and abusing and exploiting the powers of their respective offices to procure advancements and/or enhancements of the employment-related interests of female subordinates who engaged in sexual and/or romantic relationships with either or both Defendant Mathews and Defendant Ferguson – and failed and refused to take any action to stop or prevent the above-described misconduct of Defendants Mathews and Ferguson.   Defendant Clyburn was aware further of the appearance of impropriety created and caused by the above-described misconduct of Defendants Mathews and Ferguson and failed and refused to take any action to halt or prevent the continued appearance of impropriety.   On information and belief, Defendant Clyburn failed to report the above-described misconduct of Defendants Mathews and Ferguson to the Chief Judge of the Defendant District Court of Maryland or to the Maryland Commission on Judicial Disabilities.   In failing to make any attempt to stop or prevent the continued misconduct of Defendants Mathews and Ferguson as aforesaid, Defendant Clyburn knowingly violated the ethical rules applicable to Maryland judges.

41.   A substantial number of employees of the Defendant District Court of Maryland assigned to District 1 believed, based upon the overt behavior of Defendant Mathews and Defendant Ferguson and accounts of that behavior that were disseminated widely among the District 1 work force, that Defendant Mathews and Defendant Ferguson engaged in sexual and/or romantic relationships with their female subordinates;

42.   Female employees of the Defendant District Court of Maryland who were assigned to District 1 and engaged in the above-described sexual and/or romantic relationships with either or both Defendant Mathews and Defendant Ferguson  were promoted or otherwise benefitted from advancements or enhancements of their employment-related interests because they had engaged in such relationships rather than on the basis of their legitimate qualifications for such advancements or enhancements of their employment-related interests.

43.   The above-described practice by Defendants Mathews and Ferguson of procuring advancements and/or enhancements of the employment-related interests of female subordinates who had engaged or were engaging in sexual and/or romantic relationships with Defendant Mathews and/or Defendant Ferguson resulted in the denial of advancement of more qualified candidates and thus a repudiation of merit principles in favor of *quid-pro-quo* sexual harassment and unlawful discrimination on the basis of gender, age, race, and marital status.

44.   During his tenure as an association judge in District 1 of the Defendant District Court of Maryland as afore, Defendant Clyburn was aware that Defendant Mathews and/or Defendant Ferguson unlawfully effected or procured personnel selections and/or advancements or enhancements of employment-related interests on the basis of race, black, and that Defendant Mathews and/or Defendant Ferguson unlawfully and unethically prevented or interfered with the selection of candidates for employment and other advancements or enhancements of employment-related interests on the basis of merit.

45.   Defendant Clyburn knew that the above-described behavior of Defendant Mathews constituted a violation of at least the following the ethical standards for all Maryland judges:

   i.   The standard of judicial conduct now codified as Rule 1.2(5) of the Maryland

Code of Judicial Conduct, Maryland Rule 16-813, which mandates the avoidance of an appearance of impropriety and the substance of which was fully effective at all times pertinent hereto; and

      ii.  The standard mandating that judges serving in administrative capacities shall make personnel selections on the basis of merit and shall avoid favoritism in making such selections; and

      iii. The ethical standard mandating that Maryland judges shall not allow their staff employees to engage in conduct that is improper or unethical for judges to engage in.

    46.  Defendant Clyburn knew or, but for his willful ignorance would have known that Defendants Mathews and Ferguson had entered into an agreement whereby neither Defendant Mathews nor Defendant Ferguson would complain or report to their superiors (including Defendant Clyburn) or otherwise oppose the other's engagement in a pattern of misconduct as described above.

    47.  At all times pertinent hereto Defendants Mathews, Hargrove, and Clyburn were aware of the ethical standards applicable to the conduct of Maryland judges, including but not limited to the ethical requirement that judges who perform and/or are responsible for administrative functions and/or oversight of administrative functions shall make personnel selections and/or ensure that personnel selections are made "impartially and on the basis of merit; and shall avoid * * * favoritism * * *."  [*See*, Rule 2.13(a)(1) and (2) of the Maryland Code of Judicial Conduct, Maryland Rule 16-813.]  Each of the Defendants Mathews, Hargrove, and Clyburn failed to comply to the foregoing standard.

    48.  At all times pertinent hereto Defendants Hargrove and Clyburn were aware that

Maryland judges who become aware of "unprofessional conduct" by another judge have an ethical duty to "take or initiate appropriate corrective measures", including the duty to report such conduct to the Maryland Commission on Judicial Disabilities if "other corrective measures are not appropriate or, if attempted, were not successful".   [*See*, Rule 2.15(b) of the Maryland Code of Judicial Conduct, Maryland Rule 16-813, and its similar predecessor rule.]

49. During the tenure of Defendant Mathews as Administrative Judge as aforesaid, Defendant Ferguson attempted to block the promotion of a District 1 employee to a supervisory position and stated to her that his reason for doing so was that "you have too many babies." That employee filed an internal complaint of discrimination in violation of the Defendant Maryland Judiciary's published rules, and she was ultimately awarded the promotion she had sought, and for which she was fully qualified. Defendant Ferguson suffered no discipline or other sanction for attempting to block the promotion as aforesaid.  On information and belief, Defendants Mathews and Clyburn supported Defendant Ferguson's attempt to block the promotion as aforesaid.  In the alternative, neither Defendant Mathews nor Defendant Clyburn opposed Defendant Ferguson's attempt to block the promotion as aforesaid. The employee whose promotion was initially blocked by Defendant Ferguson as aforesaid but then was awarded to her after she complained to the Office of Fair Practices of the Defendant Maryland Judiciary continued to be subjected to hostile treatment by Defendants Mathews and Ferguson and District 1 supervisory employees who were loyal to Defendant Ferguson.

50.  On information and belief, associate judges serving in District 1 of the Defendant District Court of Maryland, in addition to Defendants Hargrove and Clyburn, were aware of the above-described misconduct of Defendants Mathews and Ferguson, but refrained from opposing

or reporting that misconduct because of their reasonable belief because they believed the above-described misconduct was knowingly permitted by the senior leadership of the Defendant Maryland Judiciary and/or Defendant Clyburn as the Chief Judge of the Defendant District Court of Maryland.  Associate judges serving in District 1 of the Defendant District Court of Maryland were aware that the spouse of the Governor of Maryland has served as an associate judge in District 1 since August 16, 2001, and that the misconduct of Defendants Mathews, Hargrove, and Clyburn never resulted in any attempt by the Executive Branch of the Defendant State of Maryland to stop the judicial misconduct described herein.  On information and belief, associate judges serving in District 1 of the Defendant District Court of Maryland have reasonably inferred that the Governor of Maryland, Hon. Martin J. O'Malley, has for years been personally aware of the above-described misconduct of Defendants Mathews, Clyburn, and Hargrove and has chosen not to exercise his substantial power or prestige to bring about meaningful redress of that misconduct and its impact upon the efficiency and morale of the District 1 work force.

**G.  Defendant Maryland Judiciary's official policy concerning sexual harassment and discrimination.**

51.  On February 2, 2002, the Chief Judge of the Maryland Court of Appeals, the Hon. Robert M. Bell, issued an "Administrative Order Creating Anti-Bias Commission", which states in pertinent part:

> 'Whereas, The Select Committee on Gender Equality, created after a joint study of the Maryland Judiciary and the Maryland  State Bar Association, Inc. found gender bias to have a major, negative impact on the Maryland  judicial system, reported at the outset the perception of the perception of racial bias was significant* * *."

52.  By its terms, the above-described Administrative Order provided for protections

against sexual harassment and other forms of unlawful discrimination.  Effective implementation

and enforcement of the above-described Administrative Order required commitment to its

underlying principles by the managerial employees of the Defendant Maryland Judiciary and the

Defendant District Court of Maryland.  In District 1 of the Defendant District Court of Maryland,

a commitment by the senior managerial officials – Defendants Mathews and Ferguson – to the

principles of freedom from the effects of gender bias, racial equality, and merit-based

advancement was wholly lacking.  During his tenure as an association judge in District 1 of the

Defendant District Court of Maryland, Defendant Clyburn had failed to take any action or to

report to the Maryland Commission on Judicial Disabilities the misconduct of Defendants

Mathews and Ferguson – which demonstrated their subordination of the ideal of merit-based

advancement and freedom from gender and racial bias to their personal interests – of which

Defendant Clyburn was aware.

53.  In September, 2011, the Defendant Maryland Judiciary issued a statement of its

"Policy on Equal Employment Opportunity and Harassment".  On information and belief, this

statement of policy is substantially the same as the policy statement it superseded.  On

information and belief, the policy of the Defendant Maryland Judiciary that was in effect during

calendar year 2010 provided for protections against sexual harassment and other forms of

unlawful discrimination.  "Harassment" is defined in that policy statement, at ¶ II.G., on page 2,

as follows:

> G. Harassment -- Behavior directed toward an individual that demands, belittles,
> intimidates, or otherwise makes the individual feel uncomfortable or threatened,
> illegally based on the individual's race, color, national origin, marital status,
> sexual orientation, gender identity or expression, gender, political or religious
> opinion or affiliation, physical or mental disability, protected genetic information,

age, or because the employee opposed job discrimination or participated in an investigation or proceeding conducted under EEO statutes or this policy. To quality as harassment, the behavior must have resulted in a tangible employment action being taken against the complainant, or the behavior complained of was so severe and pervasive as to create a hostile or intimidating environment from the perspective of a reasonable person.

This definition includes sexual harassment, which is any unwanted physical, verbal, or visual sexual advances, requests for sexual favors, and other unwanted sexually oriented conduct when:
● Submission to such conduct is made either plainly or by inference a term or condition of an individual's employment; or
● Submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting the individual; or
● Such conduct has the purpose of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

54.  On December 16, 2010, Chief Judge Robert M. Bell of the Maryland Court of

Appeals issued a memorandum to "Judiciary Supervisors and Managers" to address "Compliance

with EEO Reporting Requirements".  That memorandum states, in pertinent part:

> The Maryland Judiciary, consistent with its *Policy on Equal Employment Opportunity and Harassment* (the *Policy*), is fully committed to the principles of Equal Employment Opportunity, equality and diversity in the workplace.  For that commitment to be meaningful and practiced, it is necessary, as well as important, that management staff and every Judiciary employee be aware of the *Policy* and understand the individual roles and responsibilities it prescribes.  Recent events suggest that a reminder of those roles and responsibilities as they relate to reporting is in order.
>
> The *Policy* states that a supervisor who "becomes aware of an act or allegation of discrimination, harassment, or retaliation" immediately must notify the Administrative Official, in writing, and copy the Office of Fair Practices (OFP).  The Administrative Official who is notified is, in turn, required to notify the OFP of the alleged discriminatory, harassing or retaliatory behavior, even if the supervisor has sent the OFP a copy of the report notifying the Administrative Official of the complaint.  If the complaint is against the Administrative Official, the supervisor must notify the OFP immediately and in writing.

55.  The "Policy" referred to in the above-quoted excerpt from the memorandum issued

on December 16, 2010, by Chief Judge Bell defines an "Administrative Official" as including

"[t]he Administrative Clerk * * * of the District in which the employee works."

56.  As of December 21, 2013, the above-described policy statements had not been implemented or enforced effectively in District 1 of the Defendant District Court of Maryland because of the failure of the leadership of the Defendant Maryland Judiciary to sanction effectively the violations of the above-described policy statements manifested by the misconduct of Defendants Clyburn, Hargrove, Ferguson, and Mathews that is described herein or to eradicate and repudiate the continuing effects of that misconduct.  At all times pertinent hereto, the failure and refusal of the leadership of the Defendant Maryland Judiciary to redress or halt such misconduct constituted an insurmountable impediment to the effective implementation of the protections provided by the above-described statements of official policy.  The failure and refusal of the leadership of the Defendant Maryland Judiciary to redress or halt such misconduct created and/or perpetuated a hostile environment for the approximately two percent of the District 1 work force consisting of individuals who are white and have not engaged in sexual and/or romantic relationships with Defendant Mathews or Defendant Ferguson.

57.  As Chief Judge of the Defendant District Court of Maryland Defendant Clyburn could not have rationally believed that Defendants Mathews, Hargrove, Ferguson, and/or Grant – given the commitment of Defendant Grant to preserving the *status quo* and her loyalty to Defendant Ferguson  – would implement and/or enforce effectively rules promulgated by the Defendant Maryland Judiciary to prevent and punish sexual harassment and other modes of unlawful discrimination and protect those who complained of sexual harassment or other modes of unlawful discrimination, in light of the above-described history of violations of the rules of judicial ethics and the engagement by Defendant Mathews and Defendant Ferguson in sexual

and/or romantic relationships with female subordinates as *quid-pro-quo* sexual harassment and

their promotions or other advancements or enhancements of the employment-related interests of

female subordinates on the basis of the nonmerit factors of gender, race, submission or

acquiescence to *quid-pro-quo* sexual harassment, and/or participation in sexual and/or romantic

relationships with Defendant Mathews and/or Defendant Ferguson.

58.  The statement of "Policy on Equal Employment Opportunity and Harassment" issued

and published by the Defendant Maryland Judiciary states, at page 8, ¶ IX:

**IX.  Right to File a Complaint with Other Agencies**
The Office of Fair Practices shall inform the aggrieved individual of the right to
file a complaint with the Maryland Human Relations Commission or the Equal
Employment Opportunity Commission if the complainant is dissatisfied with the
findings and recommendations of the Office of Fair Practices.

Thus the above-quoted language allows the Office of Fair Practices ("OFP", hereinafter) to fail or

refuse to inform complainants that the time for filing complaints with such "other agencies"

continues to run during the pendency of an investigation by the OFP.  Accordingly, if an OFP

investigation consumes more than 180 days and the complainant awaits the results of that

investigation before filing with one of the "other agencies", that complainant would be unable to

file a timely complaint with the Maryland Human Relations Commission (now known as the

Maryland Commission on Civil Rights). If an OFP investigation consumed more than 300 days

from the date of the incident giving rise to the complaint, then the complainant would be unable

to file a timely complaint with the Equal Employment Opportunity Commission ("EEOC"). Thus

the above-quoted language tends to reduce the potential liability under both state and federal law

of the Defendant Maryland Judiciary. A timely filing with the EEOC is generally a prerequisite

for filing a legal action to seek judicial relief against the State of Maryland pursuant to Title VII

of the 1964 Civil Rights Act, *supra*.  An untimely filing of an administrative complaint with the EEOC may be excused, however, if the complainant is misinformed or misled as to the requirements for a timely filing.  On information and belief, the Defendant Maryland Judiciary systematically failed to provide accurate information to individuals who complained to the Office of Fair Practices concerning the requirements for a timely filing of a complaint with the EEOC or the Maryland Commission on Civil Rights.

59.  The above-described statement of the Defendant Maryland Judiciary's Policy concerning harassment and discrimination did not include any prohibition against disclosure by representatives or members of the Office of Fair Practices to management officials who were accused of sexual harassment or unlawful discrimination.  The lack of such a prohibition invited unlawful retaliation by management and/or supervisory employees accused of sexual harassment, unlawful discrimination, and/or other acts of misconduct.

60.  The above-described statement of the Defendant Maryland Judiciary's Policy concerning harassment and discrimination did nothing to prevent reliance on subjective criteria – such as the results of nonstandardized interviews conducted without generating a record – in the selection of candidates for hiring, promotion, or other advancements or enhancements in their employment-related interests.  By allowing the unfettered use of subjective criteria for personnel selections, the above-described statement of the Defendant Maryland Judiciary's Policy concerning harassment and discrimination ensured that Defendants Mathews and Ferguson could and would continue to make personnel selections on the basis of nonmerit factors.

**H.  Plaintiff's pertinent employment history.**

61.  After approximately 25 years of responsible employment in the private sector,

Plaintiff was hired by the Defendant State of Maryland for the position of Administrative Assistant II within the Defendant District Court of Maryland and was assigned to District 1 thereof on or about February 26, 2008.  In the foregoing position, Plaintiff provided direct assistance and support to a group of associate judges of District 1 of the Defendant District Court of Maryland.  Prior to Plaintiff's hiring as aforesaid, she was interviewed for the aforesaid position by Defendants Mathews, Ferguson, and Grant, in their respective official capacities.  On information and belief, Defendants Mathews, Ferguson, and Grant unanimously recommended that Plaintiff be appointed to the aforesaid position, and Defendant Clyburn approved their recommendation and effected the appointment of Plaintiff as recommended.

62.  Plaintiff was promoted to the position of "Human Resources Associate" in District 1 of the Defendant District Court of Maryland on or about March 25, 2009.  Prior to her promotion as aforesaid, Plaintiff was interviewed by Defendants Mathews, Ferguson, and Grant in their respective official capacities.  On information and belief, Defendants Mathews, Ferguson, and Grant unanimously recommended that Plaintiff would be promoted as aforesaid, and Defendant Clyburn approved their recommendation and effected the promotion of Plaintiff to the aforesaid position of Human Resources Associate.   Upon Plaintiff's promotion as aforesaid to the position of Human Resources Associate, she was assigned work space in a separate office at 5800 Wabash Avenue, Baltimore, MD, which was also the location of the work sites of Defendants Mathews, Ferguson, and Grant.

63.  Soon after the appointment of Plaintiff as aforesaid to the position of Human Resources Associate, Defendant Ferguson commenced a practice of spending substantial time each work day in Plaintiff's office.  Defendant Ferguson's practice of spending substantial time

in Plaintiff's office was unnecessary for and unrelated to the performance by Defendant Ferguson

of any official or legitimate employment function of Defendant Ferguson or Plaintiff.

64.   After being promoted to the position of Human Resources Associate and being

assigned an office at 5800 Wabash Avenue as aforesaid, Plaintiff learned from coworkers that

Defendant Ferguson had a lengthy and extensive history of engaging in sexual and/or romantic

relationships with female subordinates and a further history of promoting or procuring

promotions or other career advancements or enhancements of female subordinates who engaged

in sexual and/or romantic relationships with Defendant Ferguson.

65.   After being promoted to the position of Human Resources Associate and being

assigned an office at 5800 Wabash Avenue as aforesaid, Plaintiff learned from coworkers that

Defendant Mathews had a lengthy and extensive history of engaging in sexual and/or romantic

relationships with female subordinates and a further history of promoting or procuring

promotions or other career advancements of female subordinates who engaged in sexual and/or

romantic relationships with Defendant Mathews.

**I. Sexual harassment of Plaintiff and retaliation against her for opposing and reporting
that sexual harassment and other forms of invidious discrimination.**

66.   After her promotion to Human Resources Associate as aforesaid,  Plaintiff learned of

a widespread belief and/or perception among District 1 employees that Defendant Ferguson's

above-described conduct – involving sexual and/or romantic relationships with female

subordinates and effecting or procuring advancements of the employment interests of his sexual

and/or romantic partners – was knowingly permitted by the both Defendant Mathews and

Defendant Hargrove during their respective tenures as District 1 Administrative Judge.

67.   After her promotion to Human Resources Associate as aforesaid,  Plaintiff learned of an incident in which Defendant Ferguson engaged simultaneously in sexual and/or romantic relationships with two of his female subordinates.  One of Defendant Ferguson's above referenced paramours suffered what her coworkers viewed as a "melt down" upon learning that Defendant Ferguson favored her rival.  The rejected paramour was transferred to another courthouse within District 1; the favored paramour was promoted.

68.   After her promotion to Human Resources Associate as aforesaid, Plaintiff observed a systematic repudiation of merit principles in the District 1 personnel management and the results of many years of personnel selections on the basis of nonmerit factors that had resulted proximately from Defendants Mathews' and Ferguson's abuse the powers of their respective offices.

69.   After her promotion to Human Resources Associate as aforesaid, Plaintiff reported directly to Defendant Grant, who in turn reported directly to Defendant Ferguson.

70.   After her promotion to Human Resources Associate as aforesaid, Plaintiff learned that Defendant Grant's appointment in 2006 to the position of Deputy Administrative Clerk was procured by Defendant Mathews on the basis of his friendship with Defendant Grant's spouse, despite Defendant Grant's lack of any prior experience in judicial administration.  Appointment to the position of Deputy Administrative Clerk on the basis of merit would have required substantial  experience in judicial administration.   Defendant Grant was hired from outside of the Defendant Maryland Judiciary.

71.   After her promotion to Human Resources Associate as aforesaid, Plaintiff learned that Defendant Grant's decisions and/or recommendations concerning personnel selections and

other management functions were motivated predominantly by considerations of race:

i.  A white managerial employee who procured the appointment of three white candidates for employment in District 1, on the basis of their superior qualifications, was severely chastised by Defendant Grant because of the race of the selectees.

ii.  A black female employee whom Defendant Grant wished to be promoted to a supervisory position, based on her race, declined to interview for the position in question, and as a consequence another candidate for the promotion was selected, after being interviewed for the promotion.  The selectee was a white male who had been employed within the Defendant District Court of Maryland for some 30 years and was clearly best qualified for the subject promotion. Defendant Grant was so angry at the black female, "L.W.", who had declined to interview for the promotion in question that she (Defendant Grant) retaliated by altering the work schedule of L.W. so as to prevent her from continuing to work a second job, thus imposing a substantial economic penalty upon L.W. as a reprisal for L.W.'s failure to enable a racially discriminatory promotion.  Defendant Grant also "blackballed" L.W. so as to preclude any future promotion of her.

iii.  Defendant Grant vetoed the attempt by a white male manager to curtail unauthorized absences of his black female subordinates during business hours by requiring that his female subordinates record their arrivals and departures from their office.  The manager appealed to Defendant Ferguson, who responded, "Just be nice to the girls."  The manager resigned as soon as he could find another job.  The "girls" continued to engage in extended lunch periods and shopping trips during their normal work hours.

iv.  Defendant Grant procured the appointment of at least two black candidates for

employment who, according to the rules of the Defendant Maryland Judiciary, should have been disqualified on the basis of criminal background checks.

72.  After her promotion to Human Resources Associate as aforesaid, Plaintiff learned that Defendant Grant was willing to flout the law and could be ruthlessly vindictive in making decisions and/or recommendations concerning personnel selections and other management functions:

i.  Defendant Grant refused to allow a pregnant employee to be promoted, expressly and solely because the employee was pregnant, to the position in which the pregnant woman was already serving on an acting basis.  Defendant Naylor initially opposed the promotion because of the employee's pregnancy and urged that Defendant Grant block the promotion, and Defendant Grant did so.  Plaintiff urged Defendant Grant to confer with the Human Resources Department or the Legal Department concerning her express reason for blocking the promotion in question.  Plaintiff thus indicated that Plaintiff would report this matter if the promotion in question were ultimately denied.  Defendant Grant relented and allowed the promotion to go forward.  The promoted employee later resigned to relocate to another State, but returned to the Baltimore area and sought re-employment in District 1 of the Defendant District Court of Maryland.  With the concurrence of Defendant Grant, Defendant Naylor refused to grant this employee an interview – although the employee had a good work record and had been promoted shortly before her resignation as aforesaid.  Thus the employee was "black-balled" by Defendants Naylor and Grant because of their resentment toward the employee because she had been promoted against their wishes and despite her pregnancy, as required by law.

ii.  Defendant Grant summoned to her office a young man who had been hired for a clerical position and informed him that henceforth he would work as a courier.  The young man declined to work as a courier.  Defendant Grant reported, with knowingly falsity, to the Human Resources Department of the Defendant Maryland Judiciary and/or the Defendant District Court of Maryland that the young man had spoken rudely to her and should be barred from future State employment.  An eyewitness to the conversation between Defendant Grant and the young man contradicted Defendant Grant's allegation that the young had been rude to her.  The young man was nevertheless disqualified from future employment by the Defendant State of Maryland.

iii.  Defendant Grant visibly enjoyed firing other employees.

73.  By late February, 2010, Defendant Ferguson had developed a daily routine in which he was present in Plaintiff's office for a substantial part of each work day.  Initially Defendant Ferguson pretended that he was coming to Plaintiff's office in connection with his duties.  But this pretense was abandoned as it became apparent to Plaintiff that there was no legitimate reason for Defendant Ferguson to loiter in her office.  When in Plaintiff's office, Defendant Ferguson sat in a chair directly in front of her desk.  Defendant Ferguson sometimes spoke to Plaintiff while sitting in her office as aforesaid, and sometimes he sat silently in the chair in front of her desk. Defendant Ferguson spent more time in Plaintiff's office than in his own.  Defendant Ferguson's frequent, prolonged presence in Plaintiff's office substantially interfered with Plaintiff's performance of the duties of her employment, particularly those duties that required that Plaintiff confer with other employees assigned to District 1, whether by telephone or in person.  But for the position of Defendant Ferguson as Administrative Clerk, Plaintiff would have protested his practice of loitering in her office for no legitimate reason.  Defendant Ferguson's practice of

loitering in Plaintiff's office for no legitimate reason was the initial part of a scheme and plan by which Defendant Ferguson engaged in sexual harassment of Plaintiff in an attempt to perpetrate *quid-pro-quo* sexual harassment of Plaintiff.   Defendant Ferguson's aforesaid practice of loitering in Plaintiff's office was an abuse of the powers of Defendant's position.   Defendant Ferguson's aforesaid practice of loitering in Plaintiff's office was unwelcome to Plaintiff and in no way encouraged by Plaintiff.

74.  In late February, 2010, Defendant Ferguson offered the give Plaintiff some DVDs with movies on them.  Plaintiff replied that she would accept his offer is he had no other use for the DVDs in question.  Within the same week of the above-described exchange concerning the movies, Defendant Ferguson came to Plaintiff's office with a large bag containing some 60 DVDs, which Plaintiff accepted without ascertaining the nature of the movies that were burned ono the DVDs.

75.  In or around May, 2010, Plaintiff viewed one of the DVDs that had been given to her by Defendant Ferguson as aforesaid and discovered that the movie recorded on that DVD included numerous scenes of hardcore pornography: graphic depictions of interracial sexual intercourse. When Plaintiff learned that the movie recorded on one of the DVds given to her by Defendant Ferguson contained graphically pornographic images, Plaintiff assumed that that DVD had been mistakingly given to her by Defendant Ferguson, and thus from time to time Plaintiff would view another of the DVDs given to her by Defendant Ferguson. In the course of viewing additional DVDs given to her by Defendant Ferguson as aforesaid, Plaintiff eventually discovered five more DVDs that contained graphically pornographic movies. Each and every one of the six pornographic movies thus discovered by Plaintiff, among the approximately 60 DVDs

given to her by Defendant Ferguson, depicted interracial sexual intercourse: two black men having intercourse with a white woman, or two white men having sexual intercourse with a black woman.

76. The above-described graphic images of black men engaging in sexual intercourse with white women were deeply disturbing to Plaintiff, particularly because these images depicted the black men as predatory, aggressive, and dominating. Plaintiff has continued to experience "flashbacks" of the images of black men engaging in sexual intercourse with white women. Plaintiff's experience in discovering the pornographic material as aforesaid caused her to seek mental health care to address the impact of these images. In Plaintiff's mind, the pornographic images of black men engaging in sexual intercourse with white women correlated to and combined with her perception of Defendants Mathews and Ferguson as sexual predators who dominated women by abusing the powers of their respective offices.

77. Plaintiff's above-described encounter with the pornographic images of black men engaging in sexual intercourse with white women triggered a belief and perception by Plaintiff that she was trapped in a situation in which Defendant Ferguson could abuse her at will, with no meaningful opportunity for Plaintiff to secure redress of such abuse. Plaintiff's perception and belief – based upon her above-described experience with the pornographic materials combined with her knowledge of the history of misconduct by Defendants Mathews and Ferguson as described herein – that she could not avoid being abused psychologically and subjected to violation of her legal right to be free of sexual harassment and invidious discrimination contributed substantially to the creation and perpetuation of a hostile environment in connection with Plaintiff's subject employment. Plaintiff's economic circumstances precluded her from

resigning from her subject employment.  Plaintiff felt she had been duped by Defendant Ferguson into believing, prior to her discovery of the pornographic movies as aforesaid, that Defendant Ferguson was a benevolent force in her life, and an honorable and respected public official, in keeping with his position as District 1 Administrative Clerk.

78.  Plaintiff's discovery of the pornographic DVDs as aforesaid was unanticipated and unwelcome.

79.  Defendant Ferguson's gift of the pornographic DVDs to Plaintiff as aforesaid was part of a continuing scheme and plan devised by Defendant Ferguson by which Defendant Ferguson engaged in sexual harassment of Plaintiff with the intention of escalating his harassment to a level at which he would coerce Plaintiff into a *quid-pro-quo* sexual and/or romantic relationship with Defendant Ferguson.

80.  As a direct and proximate result of her discovery of the pornographic DVDs as aforesaid, Plaintiff was unable to work the following day and took sick leave.  Plaintiff continued thereafter to suffer emotional and psychological distress as a result of that discovery.  But because of the position of Defendant Ferguson within the Defendant District Court of Maryland and her knowledge and belief concerning Defendant Ferguson's opportunity and ability to harm her employment interests without legitimate cause, Plaintiff refrained from reporting immediately her discovery of the pornographic DVDs and the above-described course of conduct by  Defendant Ferguson – his loitering in Plaintiff's office for no legitimate reason – that had preceded and attended his giving her the pornographic DVDs as aforesaid.

81. After the discovery by Plaintiff of the pornographic DVDs as aforesaid, Defendant Ferguson continued to spend substantial time in Plaintiff's office without any legitimate reason

for doing so, and thus Defendant Ferguson continued to interfere with Plaintiff's performance of her duties as aforesaid, as he had prior to giving Plaintiff the pornographic DVDs.  But after giving Plaintiff the pornographic DVDs as aforesaid, Defendant Ferguson's behavior while in Plaintiff's office changed: Defendant Ferguson began using excessively coarse and vulgar language in Plaintiff's presence, including the frequent use of the word "fuck" and, when referring to Defendant Grant, "cunt".  Plaintiff demanded that Defendant Ferguson cease using such language to refer to Defendant Grant, but Defendant Ferguson failed to heed her demand and continued to use offensive language in her presence and in her office.  Plaintiff reasonably interpreted the change in Defendant Ferguson's language, as aforesaid, as part of his continuing attempt – beginning and continuing with Defendant Ferguson's daily loitering in Plaintiff's office and including the pornographic DVDs that he gave her – to develop a more intimate relationship with her, which was intended by Defendant Ferguson to lead to a *quid-pro-quo* sexual relationship with an implied threat of reprisal if Plaintiff resisted.  Plaintiff continued to resist, passively, this attempt by Defendant Ferguson to invade her personal sovereignty and exploit the power and prestige of his office to dominate Plaintiff on a personal level.  Defendant Ferguson's continued loitering in Plaintiff's office was unwelcome and in no way invited by Plaintiff, as was Defendant Ferguson's use of vulgar and inappropriate language as aforesaid.

82. After the discovery by Plaintiff of the pornographic DVDs as aforesaid, Defendant Ferguson inquired whether Plaintiff wished to be given more DVDs.  Plaintiff replied that she did not.   The foregoing overture by Defendant Ferguson to Plaintiff, which was unwelcome and uninvited by Plaintiff, was intended by Defendant Ferguson as a test of whether he was making progress in his scheme to induce Plaintiff to engage in a *quid-pro-quo* sexual relationship with

him.  Despite the clear signal that he was not making progress in this respect, Defendant

Ferguson continued to pursue his aforesaid scheme to develop a more intimate relationship with

Plaintiff.

83.   While continuing to come into Plaintiff's office as aforesaid, in July, 2010, and

continuing thereafter, Defendant Ferguson requested that Plaintiff conduct internet searches for

men's winter underwear during Plaintiff's official working hours.  Solely because of Defendant

Ferguson's position and authority and her awareness of his history of unlawful and improper

conduct, Plaintiff complied with Defendant Ferguson's aforesaid request.  An internet site (or

URL) provided by Defendant Ferguson to Plaintiff for this purpose displayed images of men

wearing only jock straps and briefs.  On information and belief, in directing Plaintiff to search for

men's winter underwear as aforesaid, Defendant Ferguson was continuing his efforts to establish

a more intimate relationship with her and ultimately a romantic and/or sexual relationship.

Plaintiff passively resisted Defendant Ferguson's unwelcome attempts to engage in a more

intimate relationship with her, but, because of his authority and aforesaid history, refrained from

expressing to Defendant Ferguson her objections to his above-described behavior and her

revulsion from the pornographic DVDs that Defendant Ferguson had knowingly given her, as

well as her sense that Defendant Ferguson had caused her to encounter the pornographic DVDs

as a way of exploiting the power and prestige of his position to invade Plaintiff's personal

sovereignty and to dominate Plaintiff on a personal level.

84.  Plaintiff believed she could not openly reject Defendant Ferguson's above-described

overtures and distance herself from Defendant Ferguson without jeopardizing her employment.

Plaintiff believed that Defendant Ferguson could subject at will any subordinate employee in District 1 to adverse treatment without being required to justify his actions.

85.  In approximately July, 2010, and after Defendant Ferguson had directed Plaintiff to conduct searches on the internet for men's underwear and while Defendant Ferguson continued loitering in Plaintiff's office and thus interfering with her performance of her employment duties as aforesaid, Plaintiff, in an effort to stop Defendant Ferguson's unwanted behavior her, related to Defendant Grant a full account of Defendant Ferguson's above-described behavior toward Plaintiff and requested that Defendant Grant "keep him away from me." Plaintiff requested that Defendant Grant, Plaintiff's direct supervisor and Defendant Ferguson's direct subordinate, refrain from reporting Defendant Ferguson's behavior to the Defendant Maryland Judiciary's Office of Fair Practices ("OFP") so long as Defendant Ferguson did not attempt to retaliate against Plaintiff in connection with Plaintiff's employment.  Plaintiff believed that by avoiding the initiation of a formal complaint concerning Defendant Ferguson's unwelcome and improper behavior toward her, she would avoid being targeted by Defendant Ferguson for retaliation. At this time Plaintiff was aware of Defendant Ferguson's history of engaging in sexual and/or romantic relationships with female subordinates and of Defendant Ferguson's ability to exercise unchecked the powers of his office.  Plaintiff believed that there was less likelihood of retaliation against her by Defendant Ferguson in the absence of a complaint to the OFP.

86.  At the time when Plaintiff requested that Defendant Grant not report to the OFP her complaint against Defendant Ferguson of sexual harassment, Plaintiff was unaware of any requirement that a complaint against an Administrative Clerk or other "Administrative Officials" be filed directly with the OFP.

-45-

87.  On information and belief, Defendant Grant was fully aware at the time Plaintiff communicated to Defendant Grant the aforesaid account of Defendant Ferguson's behavior toward Plaintiff  that the Defendant Maryland Judiciary required Defendant Grant report this behavior immediately to the OFP.   On information and belief, Defendant Grant never reported to the OFP the account given to her by Plaintiff of Defendant Ferguson's improper behavior.

88.  After Plaintiff's account to Defendant Grant of Defendant Ferguson's above-described behavior toward Plaintiff, Defendant Ferguson spent less time in Plaintiff's office than previously, but Defendant Ferguson's anger toward Plaintiff was evident in his demeanor in interactions with Plaintiff.

89.  The above-described conduct of Defendant Ferguson toward Plaintiff, coupled with Plaintiff's reasonable perception and belief that Defendant Ferguson had conducted himself for years in the same or similar manner in interacting with numerous other female subordinates and Plaintiff's further perception and belief that Defendant Ferguson's race (black), gender, and status afforded him protection against being disciplined for such misconduct, had the effect, and was intended by Defendant Ferguson to have the effect of subjecting Plaintiff to a hostile environment in connection with Plaintiff's subject employment.

90.  The above-described conduct of Defendant Ferguson toward Plaintiff, which created a hostile environment for Plaintiff in connection with her subject employment, altered the terms and conditions of Plaintiff's subject employment, in that:

i.  Defendant Ferguson's frequent, prolonged loitering in Plaintiff's office for no apparent purpose and in the absence of any legitimate, employment-related purpose interfered substantially with Plaintiff's performance of the duties of her subject employment;

ii.  After Plaintiff discovered that approximately six of the DVDs that had been given to her by Defendant Ferguson as aforesaid contained extensive pornographic images, Plaintiff was profoundly distrustful of Defendant Ferguson and suspected that each and ever interaction that Defendant Ferguson initiated with her was orchestrated by him in order to further his scheme to coerce her into allowing Defendant Ferguson to engage in a more intimate relationship with Plaintiff, and thus it was virtually impossible for Plaintiff to interact with Defendant Ferguson in a constructive manner;

iii.  Defendant Ferguson's exploitation and abuse of the powers of his office in order to induce Plaintiff to conduct searches on the internet for men's underwear during Plaintiff's official duty time exacerbated Plaintiff's distrust of Defendant Ferguson's motives each and every time Defendant Ferguson initiated an interaction between Plaintiff and Defendant Ferguson and convinced Plaintiff that Defendant Ferguson would exploit and abuse the powers of his office at will, and with impunity; and

iv.  Defendant Ferguson's frequent use of grossly vulgar language in the presence of Plaintiff, as aforesaid, demonstrated that Defendant Ferguson was wholly indifferent to accepted norms of behavior and was indifferent particularly to his duty to conduct himself with probity and dignity as the senior administrative official in District 1 of the Defendant District Court of Maryland, and thus Defendant Ferguson was no longer worthy of trust and respect.

v.  Defendant Ferguson's above-described conduct that directly involved Plaintiff as aforesaid – and the lack of any indication that Defendant Ferguson recognized any possibility that he would be sanctioned for this conduct – exacerbated Plaintiff's perception and belief that there was no meaningful mechanism for seeking redress of the wrongs perpetrated by those in

positions of authority in District 1.

91.   After revealing to Defendant Grant the above-described course of conduct by Defendant Ferguson, Plaintiff noticed that her work was being excessively scrutinized by both Defendant Grant and Defendant Ferguson and that both Defendant Grant and Defendant Ferguson consistently attempted to find fault with her work and to criticize falsely her job performance.

92.   After Plaintiff had reported to Defendant Grant the above-described behavior toward by Defendant Ferguson, a friend of Plaintiff and former coworker warned Plaintiff that Defendant Grant and Defendant Ferguson were maintaining a secret file concerning Plaintiff in an effort to manufacture evidence to support the discharge of Plaintiff from her subject employment.  Plaintiff never saw such a file or any actual evidence that Defendants Ferguson and Grant had created such a file.  But continued false criticism of Plaintiff's job performance by Defendants Ferguson and Grant, coupled with the aforesaid warning by her friend and former coworker, caused Plaintiff to believe that she was being targeted for retaliation.  Incidents of false criticism included, but were not limited to, the following:

      i.   Plaintiff received a telephone call at her home from one of Defendant Ferguson's administrative assistants who demanded that Plaintiff produce a certain document. The document in question was in the "in box" in Defendant Ferguson's office in accord with the standard practice regarding that particular document, which was a recurring report.  On information and belief, the aforesaid telephone call to Plaintiff at her home was instigated by Defendant Ferguson in bad faith and for the illicit purpose of intimidating Plaintiff and undermining her self-confidence.

ii.  Plaintiff was accused vehemently by both Defendant Ferguson and Defendant

Grant of generating a letter to convey an offer of employment with an erroneous title of the actual

position to be offered.  But in fact Plaintiff had been given the erroneous title by another

employee and had no knowledge that the title was incorrect.

93.  In late 2010, Defendant Naylor was promoted, pursuant to the recommendation of

Defendant Ferguson based at least in part on nonmerit factors, to the position of Division Chief

at the Borgerding Courthouse at 5800 Wabash Avenue in Baltimore City, which is the

courthouse that then housed the chambers of Defendant Hargrove and the offices of Defendant

Ferguson, Defendant Grant, and Plaintiff.  Defendant Naylor, who was thus placed in charge of

all personnel other than bailiffs assigned to the Borgerding Courthouse, was assigned an office

adjacent to Plaintiff's office.  Thereafter Defendant Naylor consistently displayed hostility

toward Plaintiff in every interaction between them, usurped certain of Plaintiff's permanently

assigned job functions (*i.e.,* functions listed in Plaintiff's Position Description and Qualifications,

or "PDQ"), refused to provide information that Plaintiff that Plaintiff needed for the performance

of her duties, directed subordinate employees not to communicate with Plaintiff or to go into

Plaintiff's office – and thus interfered substantially with Plaintiff's performance of the assigned

duties of Plaintiff's subject employment.  Plaintiff learned that Defendant Naylor was keeping a

log of Plaintiff's activities.  Plaintiff complained to Defendant Grant concerning Defendant

Naylor's above-described behavior.  Defendant Grant failed and refused to exercise her authority

to stop that behavior and joined in interfering with Plaintiff's performance of customary human-

resource functions by monitoring unduly and interfering with Plaintiff's interactions with other

District 1 employees and seeking to violate the confidentiality of Plaintiff's communications with

-49-

other District 1 employees concerning human-resources matters.

94.   On information and belief, the above-described behavior of Defendant Naylor and Defendant Grant in interfering with Plaintiff's performance of her employment functions was perpetrated in retaliation for Plaintiff's having reporting to Defendant Grant the improper actions toward her by Defendant Ferguson.  The above-described behavior of Defendants Naylor and Grant was intended to deter Plaintiff from reporting to the OFP the aforesaid improper conduct toward Plaintiff by Defendant Ferguson, to undermine and compromise Plaintiff's credibility in the event Plaintiff did report to the OFP the improper conduct toward her by Defendant Ferguson, to intimidate Plaintiff and thus to undermine Plaintiff's self-confidence and sense of security in connection with Plaintiff's subject employment.

95.   On information and belief, the above-described conduct of Defendants Naylor and Grant was jointly agreed upon by them as retaliation against Plaintiff for reporting to Defendant Grant the above-described improper conduct toward Plaintiff by Defendant Ferguson.  Thus did Defendants Naylor and Grant enter into a conspiracy to retaliate against Plaintiff for Plaintiff's opposition to the above-described gender-based adverse treatment of her by Defendant Ferguson.

96.   On information and belief, Defendant Ferguson joined in the aforesaid conspiracy between Defendants Naylor and Grant to retaliate against Plaintiff for Plaintiff's opposition to the above-described conduct by Defendant Ferguson toward Plaintiff.  The aforesaid conspiracy, thus expanded to include Defendant Ferguson, furthered the goal of the above-described conspiracy between Defendant Ferguson and Defendant Mathews in that all of the co-conspirators sought to protect Defendants Mathews and Ferguson from being sanctioned for their misconduct, and the absence of such sanctions allowed Defendant Ferguson to continue to

engage in misconduct involving relationships with female subordinates and abuse of the powers of his office.

97.  The interests and purpose served and intended to be served by the aforesaid co-conspirators were purely personal, did not further any legitimate interest, and were never intended by the co-conspirators to serve or further any legitimate interest.  The interests and purpose served and intended to be served by the aforesaid co-conspirators were to retaliate against Plaintiff for reporting the above-described conduct toward her by Defendant Ferguson and thus to chill Plaintiff's exercise of her free-speech and petitioning privileges with regard to a matter of public concern – abuse of authority by a senior administrative official in the Defendant District Court of Maryland and sexual harassment – and in a manner in no way disruptive of her employer's legitimate governmental operations.

98.  On information and belief, a principal motive of the aforesaid co-conspirators in conspiring together was to assist Defendants Mathews and Ferguson in evading accountability for their misconduct in (I) engaging in sexual and/or romantic relationships with their female subordinates that were induced, at least in part, by the promise, whether express or inferrable from their actual past practice, that female subordinates who engaged in such relationships with them would realize undeserved advancement in their employment or of their employment-related interests, and (ii) procuring undeserved and/or unwarranted promotions or advancements of female subordinates who engaged in sexual and/or romantic relationships with either or both Defendant Mathews and Defendant Ferguson.

99.  The original conspiracy between Defendants Mathews and Ferguson was intended by them to facilitate their perpetration of *quid-pro-quo* sexual harassment and other modes of

unlawful discrimination on the basis of gender, age, and/or marital status.  The original

conspiracy between Defendants Mathews and Ferguson furthered the class-based animus shared

by Defendant Mathews and Defendant Ferguson against women and white persons.  The later-

formed conspiracy  – joined by Defendants Naylor, Grant, and Ferguson – furthered the original

conspiracy and thus furthered also the class-based animus against women and against white

persons that motivated Defendants Mathews and Ferguson to enter into the original conspiracy.

100.  Defendant Naylor joined in the above-described conspiracy in order to perpetuate a

pattern of racial discrimination in District 1's personnel selections.  Defendant Naylor, who as

Division Chief was the senior administrative employee of the Defendant State of Maryland in

charge of clerical and support functions specifically at the Borgerding Courthouse, engaged in an

unbroken pattern of racially discriminatory personnel selections: from the time Defendant Naylor

was promoted to the position of Division Chief as aforesaid through December 21, 2013,

Defendant Naylor never selected a white candidate.  In one instance, Defendant Naylor hired a

black woman with no judicial experience whatever for a position that had been applied for by a

white woman with one year's judicial experience and an excellent work record as a contract

employee.  The unsuccessful white candidate was later hired by another District 1 supervisor for

a position in another courthouse.

101.  Upon becoming convinced that she was being targeted for retaliation as aforesaid,

Plaintiff immediately reported to the OFP – on February 24, 2011 – the above-described conduct

toward her by Defendant Ferguson and the course of retaliation that followed Plaintiff's

disclosure of that conduct to Defendant Ferguson.

102.  On information and belief, Defendant Grant joined with Defendant Ferguson and

Defendant Naylor in retaliating against Plaintiff and thus seeking to undermine Plaintiff's

credibility as a complainant against Defendant Ferguson for the following reasons:

      i.  Defendant Grant believed that, as in the past and regardless of Plaintiff's well

justified complaint about Defendant Ferguson's above-described sexual harassment, Defendant

Ferguson would not lose his position as Administrative Clerk and that thus Defendant Ferguson

would continue to be her direct supervisor.

      ii.  Defendant Grant had exploited the corrupt and discriminatory system of

personnel management that Defendant Ferguson had perpetuated and maintained in District 1 of

the Defendant District Court of Maryland with the active and knowing support of Defendants

Mathews, Hargrove, and Clyburn.  Defendant Grant herself, having been appointed to the

position of Deputy Administrative Clerk despite her lack of judicial experience, was a

beneficiary of this system.

      iii.  Defendant Grant believed that her own employment would be in jeopardy, for

her support of and acquiescence in the above-described behavior of Defendants Ferguson,

Mathews, and Hargrove, if Plaintiff's complaint against Defendant Ferguson were given

credence by the leadership of the Defendant Maryland Judiciary.

      iv.  Defendant Ferguson had promised Defendant Grant that she would be his

replacement in the position of Administrative Clerk for District 1 upon his retirement.

    103.  The above-described retaliation by Defendants Ferguson and Grant was part of a

continuing and evolving scheme that included the course of conduct described by Plaintiff to

Defendant Grant and was intended to destroy or substantially undermine Plaintiff's credibility in

the event that Plaintiff filed a formal complaint against Defendant Ferguson with the OFP or with

an external agency and also to bring about Plaintiff's discharge from her subject employment.

104.  At the time Plaintiff filed the complaint with the OFP as aforesaid, Plaintiff believed, and was caused or allowed by the OFP to believe and was never disabused by the OFP of her belief, that filing the complaint with the OFP tolled the running of the time for filing a complaint concerning the same wrongs with an external agency such as the U.S. Equal Employment Opportunity Commission ("EEOC") or the Maryland Commission on Civil Rights ("MCCR").  The Defendant Maryland Judiciary's statement of its policy on sexual harassment and discrimination mandated that the OFP inform complainants that they could file a complaint with such an external agency "if the Complainant is dissatisfied with the findings and recommendations of the Office of Fair Practices."  Thus the foregoing policy of the Defendant Maryland Judiciary implied that complainants could, without suffering legal detriment, await the conclusion of the OFP investigation before filing with the EEOC and/or MCCR.  The implication that the time for filing a complaint with an external agency was tolled while the OFP investigated an internal complaint and issued its findings was legally incorrect, unbeknownst to Plaintiff. Thus misinformed of the pertinent requirements for filing a timely complaint with the EEOC and/or MCCR, Plaintiff awaited the outcome of the OFP investigation.  Plaintiff had no rational reason to question her understanding of the policy of the Defendant Maryland Judiciary as quoted *supra*.

105.  Plaintiff's complaint to the OFP remained pending for seven months and thus for a period longer than the period for filing complaints, 180 days, with the Maryland Commission on Civil Rights ("MCCR").  But the above-described retaliation against Plaintiff, part of a continuing and evolving scheme that included the original sexual harassment of Plaintiff by

Defendant Ferguson, continued during the pendency of Plaintiff's complaint to the OFP and through the time of Plaintiff's constructive discharge by Defendants as described *infra*. Thus the sexual harassment of Plaintiff and subsequent retaliation as described herein constituted a continuing violation.

106.   In the course of the OFP investigation of Plaintiff's complaint against Defendant Ferguson, it received information from K.H., a female subordinate of Defendant Ferguson who had engaged in a sexual and/or romantic relationship with Defendant Ferguson, to the effect that Defendant Ferguson had promised her that she would be promoted to the position of Administrative Clerk in another District of the Defendant District Court of Maryland.  K.H. was promoted to the position of Deputy Administrative Clerk in another district of the Defendant District Court of Maryland, but was never promoted to the position of Administrative Clerk. K.H. told the OFP that she had regularly exchanged emails with Defendant Ferguson that displayed images of naked women and other improper content prohibited by rules promulgated by the Defendant Maryland Judiciary.  K.H. told the OFP that Defendant Mathews had ordered her to promote T.W. from a contract bailiff's position to a permanent clerical position with full benefits at a time when Defendant Mathews and T.W. were engaging in a sexual and/or romantic relationship with each other.

107.   Larry Jones, acting manager of the OFP, disclosed to Defendant Ferguson the information that had been supplied to the OFP by K.H.  In retaliation for the information provided by her to the OFP, K.H. was "black-balled" and has never been promoted beyond the position of Deputy Administrative Clerk.

108.   To support her complaint against Defendant Ferguson, Plaintiff provided to the OFP

-55-

the six DVDs that contain pornographic images as aforesaid.  Upon completion of the OFP

investigation, Plaintiff requested the return of the DVDs.  OFP Director Karen Williford

responded that the DVDs had been "misplaced".  Plaintiff inquired as to how the "chain of

evidence" could be established and received no response.  The DVDs in question have never

been returned to Plaintiff.  Plaintiff's request, through counsel, for an explanation of the

whereabouts and status of the DVDs has been ignored.   Plaintiff never relinquished her

ownership interest in the subject DVDs.

109.  Evidence submitted in connection with at least one other investigation by the OFP,

in addition to the DVDs said to have been "misplaced" by the OFP, has been "misplaced" or lost.

110.  On August 2, 2011, the OFP issued a letter informing Plaintiff that it had found that

Defendant Ferguson had engaged in sexual harassment of her, and that the OFP investigation

would enter the "penalty stage".   The aforesaid letter included the following:

> If you're not satisfied with the determination of this investigation you may file a
> charge with the U.S. Equal Employment Opportunities [*sic*] Commissioners [*sic*]
> or the Maryland Human Relations Commission.

Thus the above-described letter implied that Plaintiff should file a complaint with an external

agency *after* the completion of the OFP's investigation.  The letter implied further that the time

for filing such an external complaint was tolled during the pendency of the OFP's investigation.

111.  Contrary to the published policy of the Defendant Maryland Judiciary, Plaintiff was

never consulted by the OFP or the leadership of the Defendant Maryland Judiciary concerning

the determination of an appropriate disciplinary sanction of Defendant Ferguson or any

protection against retaliation against her by Defendant Ferguson or those loyal to him.

112.  Subsequent to her being informed by the OFP that her complaint of sexual

harassment by Defendant Ferguson was substantiated, Plaintiff was informed further that

Defendant Ferguson's discipline for having engaged in sexual harassment as Plaintiff had

complained would be a suspension of 30 days without pay and that Defendant Ferguson would

be ordered to avoid any interaction or contact with Plaintiff upon his return to active

employment. On information and belief, Defendant Ferguson had been suspended or otherwise

disciplined twice previously for sexual harassment or other conduct that was offensive to female

employees of the Defendant District Court of Maryland. On information and belief, Defendant

Ferguson was warned when he was previously disciplined that any further misconduct would

result in termination of his employment by the Defendant District Court of Maryland.  The

suspension of Defendant Ferguson as aforesaid was inconsistent with the "progressive discipline"

policy of the Defendant Maryland Judiciary.

113.  But for Defendant Ferguson's race (African American) and his decades-long

personal friendship with Defendant Clyburn, Defendant Ferguson would have been permanently

removed, either by discharge or demotion, from the position of Administrative Clerk within the

Defendant District Court of Maryland as a disciplinary sanction for his sexual harassment of

Plaintiff.

114.  Defendant Clyburn elected to suspend Defendant Ferguson rather than terminate his

employment with knowledge that his decision would undermine effective enforcement of the

policy of the Defendant Maryland Judiciary prohibiting sexual harassment and gender

discrimination and that this decision would expose Plaintiff to a substantial risk of retaliation.

115.  Plaintiff protested to Defendant Clyburn that the discipline imposed upon

Defendant Ferguson as aforesaid was inappropriately lenient in light of Defendant Ferguson's

having been disciplined twice previously for misconduct toward female employees of the

Defendant District Court of Maryland.  Plaintiff received no response to her aforesaid protest.

116.  Soon after the return of Defendant Ferguson to active employment, he purposefully

violated the formal order issued by his superiors that directed Defendant Ferguson to avoid any

interaction or contact with Plaintiff.  Defendant Ferguson violated the aforesaid order by

following Plaintiff closely – almost touching Plaintiff – as she exited the courthouse where she

worked.

117.  Plaintiff complained to the OFP that Defendant Ferguson had violated the order

directing him to have no contact or interaction with Plaintiff, but her complaint was rejected and

no action was taken against Defendant Ferguson for his conduct in question.

118.  Plaintiff repeatedly sought to be assigned to a work site in a building other than the

building in which Defendant Ferguson's office was located.  Plaintiff was summoned the

chambers of Defendant Hargrove and threatened by Defendant Hargrove with being relocated to

the basement of the East Side courthouse on North Avenue in Baltimore City, which was a

substantially less attractive place in which to work and would have entailed an increased risk to

Plaintiff's personal safety.  Defendant Hargrove told Plaintiff with knowing or reckless falsity

that there was no space for her in the a building that was being renovated and is known as the

Shillman Building.

119.  Plaintiff repeatedly sought reassignment to a position in another District of the

Defendant District Court of Maryland, but, on information and belief, her requests for such a

reassignment were not acted upon in good faith.

120.  After reports in the news media concerning Plaintiff's legal action against the

Defendant Maryland Judiciary and the Defendant District Court of Maryland to seek redress for

the sexual harassment of her by Defendant Ferguson and the ensuing retaliation against her for

complaining of sexual harassment as aforesaid, Plaintiff learned that the senior leadership of the

Defendant Maryland Judiciary had decided to reassign Defendant Ferguson to an undisclosed

work site where he could not be seen by the public or the news media as a precaution against

further "complaints".  Plaintiff felt that this decision meant that she was perceived by the

leadership of the Defendant Maryland Judiciary as a potential source of further complaints and

thus was an adversary.  Plaintiff felt further that the leadership of the Defendant Maryland

Judiciary had subordinated the public interest in restoring integrity to the administration of

District 1 to the personal and private interests of Defendants Ferguson, Hargrove, and Clyburn.

121. In mid-2012 Plaintiff submitted a complaint to the OFP about a "lack of diversity" in

the District 1 work force, which then was approximately 98 percent black while the percentage of

blacks in the population of Baltimore City was approximately 63 percent, according to the 2010

Census.  Plaintiff's aforesaid complaint was rejected without an explanation.  At that time

Plaintiff reasonably believed that there was a substantial disparity between the racial composition

of District 1's actual workforce and the racial composition of the applicant pool for District 1

employment.  Plaintiff reasonably believed that the disparity between the racial composition of

the District 1 workforce and the applicant pool for District 1 employment was attributable to a

long-standing pattern of racial discrimination in hiring.  By complaining of lack of diversity as

aforesaid, Plaintiff sought to bring about a correction of that disparity, which she attributed to a

discriminatory hiring practice.  Thus Plaintiff opposed in good faith a practice that she believed

to be unlawfully discriminatory.

122.  Plaintiff reported to appropriate authorities within the Defendant District Court of Maryland that a black female employed as an administrative assistant to Defendant Ferguson was conducting a private business from her work place and was using State equipment and resources to conduct her private business.  Plaintiff never received a response to her complaint, and the employee whom she had reported as aforesaid continued to operate her private business from her State work place.  Defendant Ferguson was fully aware that his administrative assistant was conducted her private business from Defendant Ferguson's office as aforesaid and allowed this practice to continue.  On information and belief, Defendant Ferguson was never required to explain his culpable failure to correct the above-described misconduct by his administrative assistant.

123. In the early spring of 2013, Plaintiff learned that a white supervisor in District 1 was severely chastised by Defendant Grant for hiring three white subordinates who were best qualified for the positions for which they were hired.  All three of the individuals thus hired have college degrees, and the published minimum qualifications for the respective positions for which they were hired do not include a college degree.   Unlike several individuals hired by or at the behest of Defendant Hargrove, the individuals hired as aforesaid by the white supervisor all passed criminal background checks.

124.  In the spring of 2011, Plaintiff learned of an opening in a Supervisor 1 position within the Defendant District Court of Maryland.  When Plaintiff indicated to Defendant Grant her desire to apply for the position, Defendant Grant responded that Plaintiff was unqualified for the position, because Plaintiff lacked "judicial experience" – as had Defendant Grant when Defendant Grant was hired for the position of Deputy Administrative Clerk as a favor to her

spouse, and that Plaintiff should not apply for the position.  A black female who was less

qualified for the position than Plaintiff, Marcy Goode, applied for and was selected by Defendant

Ferguson for the position, but ultimately declined to accept it.   Had Plaintiff applied for and been

selected for the position in question,; she would have accepted it.

125.  On or about November 18, 2013, Defendant Abrams was reassigned to District 1 to

replace Defendant Ferguson as Administrative Clerk.  On information and belief, prior to her

assignment to District 1 as aforesaid, Defendant Abrams was informed of Plaintiff's complaint to

the OFP and Plaintiff's institution of legal action against the Defendant District Court of

Maryland and the Defendant Maryland Judiciary.  Defendant Abrams initially declined the offer

to her by Defendant Clyburn of reassignment to District 1 as Administrative Clerk, or, in the

alternative, Defendant Abrams expressed reluctance to accept the subject assignment, on the

ground that the subject position was Defendant Ferguson's.  On information and belief,

Defendant Abrams and Defendant Ferguson were friends prior to the offer to Defendant Abrams

of reassignment to District 1.  On information and belief, Defendant Abrams believed that it was

unjust that Defendant Ferguson was being compelled to vacant "his" position of Administrative

Clerk.

126.  On or about November 22, 2013, Plaintiff transmitted an email to Defendant

Abrams describing Defendant Naylor's conduct toward her as aforesaid and requesting that

Plaintiff's work station be moved to a location not in close proximity to the work station of

Defendant Naylor.  Defendant Abrams did not respond to Plaintiff's aforesaid email and later

stated to Plaintiff that Defendant Abrams had not received the email.  On information and belief,

Defendant Abrams' denial that she received Plaintiff's email as aforesaid was knowingly false,

or, in the alternative, Defendant Abrams was aware of Plaintiff's subject email but chose not to read it. Plaintiff orally described Defendant Naylor's behavior toward her, including Defendant Naylor's interference with Plaintiff's performance of her employment duties, but Defendant Abrams refused to take any action in response to Plaintiff's complaint.

127. Defendant Naylor's above-described conduct toward Plaintiff constituted an adverse change in the terms and conditions of Plaintiff's subject employment, in that Plaintiff was unable to perform certain of her job functions because of the noncooperation and interference by Defendant Naylor as aforesaid.

128. Soon after Defendant Abrams commenced serving as District 1 Administrative Clerk, a senior white managerial official communicated to her an extensive and accurate account of the history of misconduct by Defendants Mathews and Ferguson and the impact of that misconduct upon the morale and efficiency of the District 1 work force. Defendant Abrams initially indicated that she would address the problems thus described to her, but she alter indicated she intended to maintain the *status quo* without addressing the problems thus identified to her. On information and belief, the dramatic change in Defendant Abrams' attitude toward the problems thus identified to her was brought about by her joining in the above-described conspiracy to retaliate against Plaintiff.

129. The continuation of Defendant Naylor's above-described conduct, after Plaintiff complained to Defendant Abrams about it, demonstrated to Plaintiff that Plaintiff was being subjected to unlawful retaliation by both Defendant Naylor and Defendant Abrams.

130. Marcy Goode ("Ms. Goode", hereinafter), a black female employee of the Defendant District Court of Maryland who works in the office of the Chief clerk in Annapolis,

was consistently hostile to Plaintiff and refused to communicate to Plaintiff information essential

for Plaintiff's performance of her employment duties.  Ms. Goode was aware of Plaintiff's

above-described complaint of sexual harassment and retaliation against Defendant Ferguson.  In

a meeting attended by the supervisor of Ms. Goode, Defendant Grant, and Plaintiff, Plaintiff

complained about Ms. Goode's consistent discourtesy toward Plaintiff and refusal to respond to

communications from Plaintiff and refusal to provide to Plaintiff information needed for the

performance of Plaintiff's duties.  Ms. Goode's supervisor directed that Ms. Goode engage in

necessary communications with Plaintiff.  During the aforesaid meeting, Defendant Grant offered

no support of Plaintiff and ridiculed Plaintiff for her complaint.  Ms. Goode's above-described

conduct toward Plaintiff, which Defendant Grant supported by her above-described behavior in

the aforesaid meeting, was racially discriminatory and unlawfully retaliatory and was known by

Defendant Grant to be racially discriminatory and unlawfully retaliatory.  Defendant Grant had

refused to request a meeting with Ms. Goode's supervisory after Plaintiff had complained to

Defendant Grant about Ms. Goode's behavior, and the above-described meeting with Ms.

Goode's supervisor had been requested by Plaintiff.

131.  At a meeting of District 1 supervisors, Defendant Abrams stated that anyone who

did not like or agree with the way District 1 was managed could leave.   Plaintiff reasonably

understood the foregoing statement by Defendant Abrams as an indication that Defendant

Abrams intended to allow Defendant Naylor to continue interfering with Plaintiff's performance

of her employment duties and other hostile behaviors by Defendant Naylor toward Plaintiff.

132.  On information and belief, Defendant Abrams was instructed by Defendant Clyburn

and/or others among her superiors to offer or provide no support of Plaintiff's claim of unlawful

retaliation, and Defendant Abrams interpreted the aforesaid instruction as a prohibition against providing any assistance to Plaintiff that would have allowed Plaintiff to perform the duties of her employment without interference by Defendant Naylor or other District 1 employees.  In the alternative, Defendant Abrams perceived Plaintiff as an adversary of the Defendant Maryland Judiciary and the Defendant District Court of Maryland and retaliated against Plaintiff by depriving Plaintiff of the benefits of the normal and customary managerial oversight and control that would have curtailed Defendant Naylor's acts of overt hostility toward Plaintiff because of Plaintiff's race and engagement in protected activities.

133.   On September 30, 2013, the Honorable Barbara B. Waxman commenced serving as the Administrative Judge of District 1 of the Defendant District Court of Maryland, after having served as an associate judge in District 1 since 1991, thus replacing Defendant Hargrove in that position.  Judge Waxman was aware of the legal action brought by Plaintiff against the District Court of Maryland and the Maryland Judiciary and of attendant reports in the media concerning Plaintiff's legal action.  Judge Waxman was aware also of the history of misconduct by Defendants Mathews and Ferguson involving abuse of the powers of their respective offices as aforesaid.  Judge Waxman is a white woman.

134.   Upon becoming Administrative Judge as aforesaid, Judge Waxman commenced an investigation of the complaints made by Plaintiff, which included interviews of at least four employees assigned to District 1.

135.   Defendant Clyburn learned of the above-described investigation by Judge Waxman.  On information and belief, Defendant Clyburn ordered that the investigation by Judge Waxman be halted and that Judge Waxman allow Defendant Abrams, Judge Waxman's subordinate,

freedom to manage personnel matters concerning District 1's administrative employees. The aforesaid order issued by Defendant Clyburn to Judge Waxman contrasted with his substantially more deferential treatment of her two black male predecessors in the position of Administrative Judge, Defendants Mathews and Hargrove. Defendant Clyburn's treatment of Administrative Judge Waxman generally has been substantially less deferential than his treatment of Defendant Hargrove and Defendant Mathews. On information and belief, Defendant Clyburn's less deferential treatment of Judge Waxman, which constitutes invidious discrimination on the basis of gender, was and is intended by Defendant Clyburn to preserve and leave unredressed a long-standing pattern of invidiously discriminatory personnel actions in District 1 and to preclude any action or disclosures supportive of Plaintiff or any of Plaintiff's allegations of unlawful actions by the Defendants herein.

136. Defendants Ferguson, Grant, Naylor, Hargrove, Clyburn, and Abrams conspired in furtherance of a common scheme and agreement to seek to oust Plaintiff from her subject employment in retaliation for Plaintiff's complaint against Defendant Ferguson and Plaintiff's subsequent commencement of the instant legal action. Plaintiff was targeted for retaliation also because she complained to the OFP of a "lack of diversity" and reported the gross misconduct of Defendant Ferguson's administrative assistant who conducted her personal for-profit business out of Defendant Ferguson's office with the use of State equipment and resources.

137. Plaintiff suffered increasingly from the physiological, psychological, and emotional effects of stress and anxiety caused proximately by her treatment complained of herein and was advised by a competent care giver that continued employment without a substantial improvement in her work environment and alleviation of such stress and anxiety would be detrimental to

Plaintiff's health and well being.

138.  On or about December 21, 2013, Plaintiff submitted her resignation from the employ of the Defendant State of Maryland, in response to the events described herein and the intolerability of the conditions of her employment, including but not limited to the following:

i. A history of systemic discrimination in District 1 personnel matters that "so heavily polluted" the working environment of Plaintiff that her "emotional and psychological stability" was seriously compromised.  The aforesaid history left a continuing legacy of dysfunction and corruption of merit principles, so that only the beneficiaries of that history enjoy security in their employment, as illustrated by the events described herein;

ii.  the discriminatorily and corruptly lenient disciplining of Defendant Ferguson;

iii.  Defendant Ferguson's acquiescence to his administrative assistant's operation of a private business out of her (and Defendant Ferguson's) office and the failure of the Administrative Office of the Maryland Courts to respond to Plaintiff's complaint about this misconduct;

iv.  the discriminatory denial of an opportunity for Plaintiff to seek promotion to a supervisor 1 position;

v.  the racially discriminatory interference with a white accounting supervisor's management of his unit,

vi.  Defendant Grant's severe chastising of white supervisor for hiring three qualified white applicants on the sale basis of their qualifications and merit;

vii.  Rejection, or disregard, by the OFP of Plaintiff's complaint of lack of diversity in District 1;

viii.  Defendant Mathews' unsanctioned comment that he didn't "give a fuck" about the impact of his misconduct;

ix.  Administrative Judge Rinehardt's inability to oust Defendant Ferguson from his position after he had committed serious misconduct.

x.  A failure by District 1 judges to discharge their ethical duty to report Defendant Mathews' misconduct and the continuing effect of this profound failure of ethics, in an institution charged with the administration of public justice.

xi.  A demonstrated lack of effective protections against unlawful retaliation for protected activities, as a result of an extensive history of disqualifying misconduct by those charged with implementation and enforcement of the protections that the Defendant Maryland Judiciary has purported to put in place, and the willingness of the leadership of the Defendant Maryland Judiciary to compromise the opportunity of those complaining of violations of their legal rights to seek effective redress outside of the Maryland Judiciary.

xii.  Toleration by the leadership of the Defendant Maryland Judiciary of many years of misconduct by Defendant Ferguson, by allowing him to continue to be employed as Administrative Clerk after three incidents of serious misconduct, and the decision by the leadership of the Defendant Maryland Judiciary to "hide" Defendant Ferguson at a secret worksite to shelter him from the public and the media while maintaining his salary of $115,000 per year.

xiii.  Continued demonstrations of unrelenting hostility toward Plaintiff by Defendant Naylor, including but not limited to Defendant Naylor's continued interference with Plaintiff's performance of her job, usurpation of job functions that were listed in Plaintiff's

position description and which had previously been performed by Plaintiff, and excessive scrutiny of Plaintiff's activities, as aforesaid, with no reasonable expectation that such adverse treatment ever would cease, even after Plaintiff reported this treatment to Defendant Abrams. Plaintiff's dismay and despair over her treatment by Defendant Naylor was exacerbated by Plaintiff's knowledge that Defendant Naylor had continued her abusive behavior toward Plaintiff with the knowledge of several managerial employees, and that the abusive behavior had not diminished during a three-year period.  Continuing through December 21, 2013, Plaintiff was aware also that Defendant Naylor had never hired a white person and had blatantly discriminated against whites in selecting demonstrably less qualified blacks.  Plaintiff was aware further that no one in a leadership position with the Defendant District Court of Maryland had made any attempt to curb the pattern of racially discriminatory selections made by Defendant Naylor or Defendant Naylor's unlawfully retaliatory and abusive treatment of Plaintiff.

   xiv.  The impact upon Plaintiff's personal health and well being of continued stress, anxiety, and outrage; Plaintiff's perception of unredressed and unredressable injustice; and Plaintiff's reasonable and rational apprehension that her employment was continually at risk of being terminated without cause.

   xv.  Plaintiff's perception and belief that meaningful change was unlikely to occur in District 1 in view of the apparent choice of the leadership of the Defendant Maryland Judiciary to maintain the *status quo*.

   xvi.  Plaintiff's reasonable belief that she could not secure meaningful review of a complaint of judicial misconduct.

139.   As a direct and proximate result of the acts and omissions complained of herein, Plaintiff suffered, and was caused by Defendants to suffer, grievous personal and economic injury.

140.   As a direct and proximate result of the acts and omissions decried herein, Plaintiff suffered, and was caused by the Defendants herein to suffer, extreme emotional, psychological, and physiological pain and distress and substantial economic injury, including but not limited to the loss of employment paying approximately $42,000 *per annum.*

### COUNT I (C1)
### [Claim against Defendant State of Maryland, Maryland Judiciary, and District Court of Maryland for continuing violations Title VII of the Civil Rights Act of 1964 (as amended)]

141.   Plaintiff hereby incorporates by reference the foregoing ¶¶ 2-140, which are hereby realleged as if stated expressly in the instant Count.

142.   The Defendant State of Maryland and its Defendant agencies and instrumentalities, the Maryland Judiciary and the District Court of Maryland ("the State Defendants", hereinafter), knew at all times pertinent hereto, through senior administrative officials  with responsibility for management and oversight of management of personnel matters in District 1 of the Defendant District Court of Maryland, that there was no effective deterrent against continued misconduct by Defendant Ferguson in which he abused the authority of his office, as Administrative Clerk in District 1.  Such abuse of authority by Defendant Ferguson involved the exploitation of his power and authority to procure advancements and enhancements in the employment-related interests of female subordinates with whom Defendant Ferguson and/or Defendant Mathews had engaged in

sexual and/or romantic relationships, at least some of which resulted from unwelcome overtures

by Defendant Ferguson and/or Defendant Mathews.  Thus Defendant Ferguson repeatedly and

notoriously violated the rule promulgated by the Defendant Maryland Judiciary, as part of its

"Policy on Equal Employment Opportunity and Harassment" that prohibits personnel actions in

which the "[s]ubmission to or rejection of such conduct [*i.e.,* "unwanted physical, verbal, or

visual sexual advances, requests for sexual favors, and other unwanted sexually oriented

conduct"] by an individual is used as the basis for employment decisions affecting the

individual".

143.  During all times pertinent hereto, Defendant Ferguson also participated in,

encouraged and/or condoned a pattern of racially discriminatory hiring practices, as aforesaid.

144.  Defendant Grant participated in and encouraged racially discriminatory

appointments and promotions of black candidates to positions within District 1 of the Defendant

District Court of Maryland.

145.  The senior leadership of the Defendant District Court of Maryland and the

Defendant Maryland Judiciary failed to exercise effective oversight of the hiring and promotion

practices within District 1 to prevent or curtail the aforesaid pattern of racially discriminatory

selections.

146.  The senior leadership of the Defendant District Court of Maryland and the

Defendant Maryland Judiciary failed to exercise effective oversight of the hiring and promotion

practices within District 1 to prevent or curtail the aforesaid abuse by Defendant Ferguson of the

powers of his office.

147.  The senior leadership of the Defendant District Court of Maryland and the

Defendant Maryland Judiciary failed to exercise effective oversight of the hiring and promotion practices within District 1 to prevent or curtail the aforesaid abuse by Defendant Mathews of the powers of his office.

148.  The proximate result of the aforesaid failure of the leadership of the Defendant Maryland Judiciary and the Defendant District Court of Maryland to exercise effective oversight of the personnel management in District 1 was a work force whose ranks were disproportionately black and populated largely with individuals who had secured their positions on bases other than merit, who were not committed to merit employment principles, and who were not motivated to report or challenge blatant improprieties by supervisory and management personnel in District 1.

149.  By virtue of her position as the only Human Resources Associate assigned to District 1, Plaintiff had a comprehensive and panoramic view of pervasive improprieties in District 1 personnel management and the effects of such improprieties, including but not limited to:

i.  Nonmerit-based promotions and/or selections of female subordinates of Defendant Ferguson and Defendant Mathews who had engaged in sexual and/or romantic relationships with Defendant Ferguson and/or Defendant Mathews that constituted *quid-pro-quo* sexual harassment and/or gender discrimination;

ii.  Racially discriminatory selections;

iii.  The Nonmerit-based appointment of Defendant Grant, based upon the friendship of Defendant Mathews and Defendant Grant's spouse, which had the continuing effect of subjecting most of the 400 employees assigned to District 1 to Defendant Grant's oppressive and incompetent management;

iv.  Pregnancy discrimination by both Defendant Grant and Defendant Naylor.

150.  Plaintiff was a victim of unwelcome "sexually oriented advances" by Defendant Ferguson when he engaged in the misconduct toward Plaintiff described hereinbefore.

151.  The senior leadership of the Defendant District Court of Maryland and the Defendant Maryland Judiciary failed to exercise effective oversight of the functions and performance of the Office of Fair Practices ("OFP", hereinafter), with the result that:

i.  The OFP failed to safeguard or account for evidence to it by Plaintiff;

ii.  The OFP affirmatively misled Plaintiff as to the requirements of timely filings of complaints with the MCCR and the EEOC; and

iii.  The OFP improperly disclosed to Defendant Ferguson evidence and/or statements that had been received in the course of its investigation of Plaintiff's complaint of sexual harassment by Defendant Ferguson.

152.  Rules promulgated by the Defendant Maryland Judiciary that, by their terms, prohibited sexual harassment and other forms of invidious discrimination and retaliation, were ineffective in District 1 because:

i.  The administrative officials charged with enforcing the rules were themselves habitual violators of the rules;

ii.  The leadership of the Defendant Maryland Judiciary failed and refused to exercise effective oversight of the personnel management functions in District 1;

iii.  The leadership of the Defendant Maryland Judiciary failed and refused to exercise effective oversight of the OFP.

153.  The Defendant State of Maryland, through its officials responsible for management

and operation of the Defendant Maryland Judiciary and the Defendant District Court of Maryland, purposefully or negligently:

      i.  Failed to establish and maintain an effective deterrent against violation of the legal right of Plaintiff and other employees assigned to District 1 of the Defendant District Court of Maryland to be free from sexual harassment and other modes of invidious discrimination and harassment, and failed abysmally to deter violations of such rights by the very officials of the Defendant District Court of Maryland charged with enforcing and protecting those rights;

      ii.  Failed to establish and maintain an effective mechanism for victims of sexual harassment and other modes of invidious discrimination and retaliation to secure meaningful redress of the violations of their legal rights to be free of such abuses.

154.  As a direct and proximate result of the acts and omissions decried herein, Plaintiff suffered, and was caused by the Defendant State of Maryland and its Defendant instrumentalities to suffer, extreme emotional, psychological, and physiological pain and distress and substantial economic injury, including but not limited to the loss of employment paying approximately $42,000 *per annum.*

**Statement of claim presented in the instant Count:**

155.  On the basis of the facts stated herein, the Defendant State of Maryland and its Defendant agencies and instrumentalities, *viz.*, the Maryland Judiciary and the District Court of Maryland, are liable to Plaintiff for violation of Plaintiff's rights as conferred by Title VII of the Civil Rights Act of 1964 (as amended).

***Ad damnum.***

**WHEREFORE,** Plaintiff prays the following relief:

156.  An award to Plaintiff and against the Defendant State of Maryland, the Maryland Judiciary, and the District Court of Maryland, jointly and severally,  of compensatory damages in the amount of THREE-HUNDRED-THOUSAND-DOLLARS ($300,000);

157.  An award to Plaintiff and against the foregoing Defendants, jointly and severally, of back pay calculated from January 3, 2014, through the date of any judgment in favor of Plaintiff on the instant Count;

158.  Reinstatement of Plaintiff to a position within the Defendant District Court of Maryland other than in District 1 thereof, or, in the alternative, an award of front pay dating from the date of entry of a judgment for Plaintiff on the instant Count;

159.  An award to Plaintiff and against the foregoing Defendants of Plaintiff's reasonable attorney fees and costs, pursuant to and to the extent allowed by 42 U.S.C. § 2000e-5(k)

160.  Such other and further relief as to which Plaintiff may be entitled pursuant to F.R.Civ.P. 15(b) on the basis of all evidence before the court at the time a judgment is rendered herein;

161.  Such other and further relief that this Court may deem appropriate and just.


## COUNT II // C2//
### [Claim against Defendant Lonnie Ferguson for sexual harassment, gender discrimination and retaliation in violation of 42 U.S.C. § 1983]

162.  Plaintiff hereby incorporates by reference the foregoing ¶¶ 2-140 and hereby realleges the averments therein as if they were expressly pleaded in the instant Count.

163.  Defendant Ferguson engaged in the following misconduct with regard to Plaintiff:

    i.  Defendant Ferguson loitered in Plaintiff's office for no legitimate reason and

thus interfered with Plaintiff's performance of the duties of her employment, while Defendant Ferguson also neglected his own duties, to the detriment of the public and his employer, the State of Maryland, and so conducted himself toward Plaintiff without being challenged by Plaintiff by virtue of the powers of Defendant Ferguson's office.

ii.   Defendant Ferguson effected and orchestrated Plaintiff's receipt and viewing of at least six (6) pornographic DVDs, each containing and displaying black men engaging in sexual intercourse with white women.  On information and belief,  for the purpose of orchestrating Plaintiff's receipt and viewing of the aforesaid DVDs containing pornographic images was to suggest to Plaintiff that she should engage in sexual intercourse with a black man, *viz.,* Defendant Ferguson.

iii.   In furtherance of his scheme to establish a more intimate relationship with Plaintiff, Defendant Ferguson exploited and abused the powers of his office to induce Plaintiff to conduct searches on the internet for men's underwear.  Because of the powers of Defendant Ferguson's office, Plaintiff conducted the searches as requested and encountered numerous images of men wearing jock straps and briefs.

iv.   In furtherance of his goal of demonstrating to Plaintiff his power and dominance, Defendant Ferguson regularly used speech laced with gross vulgarities – "fuck" and, when referring to Defendant Grant and other women, "cunt" – while loitering in Plaintiff's office as aforesaid.

164.  Defendant Ferguson perpetrated the above-described, unwanted misconduct toward Plaintiff because of Plaintiff's gender, female.

165.  On information and belief, the above-described conduct of Defendant Ferguson

toward Plaintiff was perpetrated by Defendant Ferguson in furtherance of a scheme to establish a

more intimate and eventually a sexual relationship with Plaintiff and thus constituted "unwanted

sexually orientated conduct" within the meaning of the aforesaid statement of the Maryland

Judiciary's "Police of Sexual Harassment and Equal Employment Opportunity".

166.   Plaintiff reported to Defendant Grant, Plaintiff's direct supervisor, the above-

described behavior toward her by Defendant Ferguson.  In violation of an express rule of the

Maryland Judiciary and in order to protect Defendant Ferguson from the consequences of his

above-described misconduct, Defendant Grant failed to report to the Office of Fair Practices of

the Maryland Judiciary Plaintiff's complaint concerning the above-described behavior of

Defendant Ferguson.

167.   On information and belief, Defendant Grant immediately informed Defendant

Ferguson that Plaintiff had reported to Defendant Grant his above-described behavior.

Defendant Ferguson thereupon orchestrated and procured a course of retaliatory treatment of

Plaintiff that was joined by Defendant Grant and by Defendant Naylor upon her promotion to the

position of Division Chief at the Borgerding Courthouse at 5800 Wabash Avenue, Baltimore, in

late 2010.  The aforesaid course of retaliation – which was joined or culpably neglected by

Defendants Hargrove, Clyburn, and Abrams – culminated in the constructive discharge of

Plaintiff on December 21, 2013.

168.   Plaintiff learned that Defendant Ferguson and Defendant Grant were manufacturing

evidence to support Plaintiff's discharge, and on February 24, 2011, Plaintiff reported to the OFP

the above-described misconduct of Defendant Ferguson.  Plaintiff's report to the OFP addressed

a matter of public concern and conformed to the procedures established by the Maryland

Judiciary for the submission of complaints to the OFP.

169.  The OFP conducted an investigation of Plaintiff's above-described complaint against Defendant Ferguson.  On information and belief, in the course of its aforesaid investigation of Plaintiff's complaint against Defendant Ferguson the OFP discovered multiple incidents of improper conduct by Defendant Ferguson involving female subordinates and the abuse by Defendant Ferguson of the powers of his office.  At least some of the information obtained by the OFP in its aforesaid investigation of Defendant Ferguson was improperly disclosed to Defendant Ferguson by the acting director of the OFP, Larry Jones.

170.  The OFP issued a report of its investigation of Plaintiff's complaint against Defendant Ferguson on or about August 2, 2011.  As of result of the OFP report, Defendant Ferguson was suspended from his employment for 30 days without pay.  On information and belief, Defendant Ferguson would have been removed from his position in accord with the progressive discipline policy of the Maryland Judiciary, either by discharge or demotion, but for his race, black, and long-standing friendship with Defendant Clyburn.  Defendant Ferguson had been suspended at least twice previously for misconduct involving female subordinates.

171.  Plaintiff attempted unsuccessfully to procure a change in the physical location of her work place or to secure an alternative position in another District of the Defendant District Court of Maryland avoid any interaction with Defendant Ferguson upon his return to work after his suspension.

172.  Plaintiff continued to be subject to the unlawful retaliation procured by Defendant Ferguson for having expressively opposed the above-described sexual harassment and gender discrimination by Defendant Ferguson.  Because of the continuing course of unlawful retaliation

as aforesaid, and her knowledge of a long-standing pattern of discriminatory and corrupt

practices in District 1 personnel management, Plaintiff reasonably believed and perceived that

she would be fraudulently ousted from her subject employment and so stigmatized by her ouster

that she would be unemployable.

173.  As a direct and proximate result of the acts perpetrated or procured by Defendant

Ferguson as aforesaid, Plaintiff was subjected to adverse modifications in the terms and

conditions of her subject employment that created an intolerable and hostile work environment

and thus was forced to resign from her subject employment.

174.  Plaintiff tendered her resignation from the employ of the State of Maryland on

December 21, 2014.

175.  All acts and omissions decried and complained of herein were perpetrated by

Defendant Ferguson under color of State law.

**Statement of claim presented in the instant Count:**

176.  On the basis of the facts stated herein, Defendant Ferguson is liable to Plaintiff for

violation of her rights guaranteed by the equal protection clause of the Fourteenth Amendment

and her free-speech rights guaranteed by the First and Fourteenth Amendments to the U.S.

Constitution, as these rights are vindicated by 42 U.S.C. 1983.

***Ad damnum.***

**WHEREFORE,** Plaintiff prays the following relief:

177.  An award to Plaintiff and against Defendant Ferguson, in his individual capacity, of

compensatory damages in the amount of ONE-MILLION-DOLLARS ($1,000,000).

178.  An award to Plaintiff and against Defendant Ferguson, in his individual capacity, of

back pay calculated from January 3, 2014, through the date of any judgment in favor of Plaintiff

on the instant Count;

179.    An award to Plaintiff and against Defendant Ferguson, in his individual capacity,

of front pay calculated from January 3, 2014, through the date of any judgment in favor of

Plaintiff on the instant Count;

180.  An award to Plaintiff and against Defendant Ferguson, in his individual capacity, of

Plaintiff's reasonable attorney fees and costs, pursuant to and to the extent allowed by 42 U.S.C.

§ 1988;

181.  Such other and further relief as to which Plaintiff may be entitled pursuant to

F.R.Civ.P. 15(b) on the basis of all evidence before the court at the time a judgment is rendered

herein; and

182.  Such other and further relief that this Court may deem appropriate and just.


## COUNT III // C3//
**[Claim against Defendants Ferguson, Grant, Naylor, Hargrove, Clyburn, and Abrams for conspiring to violate Plaintiff's rights in violation of the First and Fourteen Amendments, as these rights are vindicated by 42 U.S.C. § 1983.]**

183.  Plaintiff hereby incorporates by reference the foregoing ¶¶ 2-140 and hereby

realleges the averments therein as if they were expressly pleaded in the instant Count.

184.  Defendants Mathews, Ferguson, Grant, Naylor, Hargrove, Clyburn, and Abrams

agreed and conspired to further the following common goals:

i.  To prevent or mitigate any disciplinary or legal sanctions to which Defendants

Mathews and Ferguson were liable for engaging in sexual and/or romantic relationships with

female subordinates and abusing the powers of their respective offices to procure promotions or

other advancements of the employment-related interests of those female subordinates who

engaged in such relationship or those whom Defendant Mathews and/or Defendant Ferguson

attempted to induce to engage in such relationships with them;

ii.  To maintain and perpetuate a pattern of unlawfully discriminatory selections in

District 1 personnel management and to avoid imposition upon any of the Defendants named

herein of any disciplinary or legal consequences for such selections.

iii.  To retaliate unlawfully against Plaintiff for Plaintiff's complaint to the OFP

concerning Defendant Ferguson's sexual harassment or her or other sexually oriented misconduct

toward Plaintiff; Plaintiff's complaint to the OFP concerning a "lack of diversity" in the District

1 work force; Plaintiff's expressed opposition to pregnancy discrimination by Defendant Grant

and Defendant Naylor; and Plaintiff's opposition to Defendant Naylor's unlawful retaliation

against Plaintiff.

185.  As a direct and proximate results of the acts perpetrated in furtherance of the

aforesaid conspiracy by and among all of the individual Defendants named herein, Plaintiff was

subjected to adverse modifications in the terms and conditions of her subject employment that

created an intolerable and hostile work environment and thus was forced to resign from her

subject employment.

186.  All acts and omissions in furtherance of the goals and purposes of the aforesaid

conspiracy were perpetrated to serve the personal interests of the Defendants named herein and

were not intended to serve and did not serve any legitimate societal, governmental, or public

interest.

**Statement of claim present in the instant Count.**

187.  On the basis of the facts stated herein, Defendants Mathews, Ferguson, Grant, Naylor, Hargrove, Clyburn, and Abrams are liable to Plaintiff for violation of her right of free speech guaranteed by the First and Fourteenth Amendments to the U.S. Constitution and her right to equal protection as guaranteed by the Fourteenth Amendment to the U.S. Constitution, as those rights are vindicated by 42 U.S.C. § 1983.

*Ad damnum*

**WHEREFORE,** Plaintiff prays that the following relief be awarded against Defendants Mathews, Ferguson, Grant, Naylor, Hargrove, Clyburn, and Abrams, jointly and severally, in their respective individual capacities:

188.  An award to Plaintiff of compensatory damages in the amount of ONE-MILLION-DOLLARS ($1,000,000);

189.  An award of punitive damages in the amount of FIVE-HUNDRED-THOUSAND-DOLLARS ($500,000);

190.  An award of back pay in an amount equal to the earned income lost by Plaintiff from January 3, 2014, through the date of a judgment entered in her favor on the instant Count;

191.  An award of front pay calculated from January 3, 2014;

192.  An award to Plaintiff of her reasonable attorney fees and costs, pursuant to and to the extent allowed by 42 U.S.C. § 1988;

193.  Such other and further relief as to which Plaintiff may be entitled pursuant to F.R.Civ.P. 15(b) on the basis of all evidence before the court at the time a judgment is rendered herein; and

194.  Such other and further relief that this Court may deem appropriate and just.

## COUNT IV (C4)
**[Claim against the individual Defendants for joining and engaging in a conspiracy to violate civil rights as provided by 42 U.S.C. § 1985(3)]**

195.  Plaintiff hereby incorporates by reference the foregoing ¶¶ 2-140, 184, and 185 and hereby realleges the averments therein as if they were expressly pleaded in the instant Count.

196.  Defendants Mathews, Ferguson, Grant, Naylor, Hargrove, Clyburn, and Abrams were motivated to enter into the aforesaid conspiracy and to continue that conspiracy on the basis of their class-based animus against white persons and their class-based animus against female employees of the State of Maryland who were assigned to District 1 of the District Court of Maryland and who had not and/or would not engage in sexual and/or romantic relationships with male superiors in order to realize advancements in their subject employment.

197.  All acts and omissions in furtherance of the goals and purposes of the aforesaid conspiracy were perpetrated to serve the personal interests of the Defendants named herein and were not intended to serve and did not serve any legitimate societal, governmental, or public interest.

**Statement of claim present in the instant Count.**

198.  On the basis of the facts stated herein, Defendants Mathews, Ferguson, Grant, Naylor, Hargrove, Clyburn, and Abrams are liable to Plaintiff for violation of her right not to be subjected to adverse treatment, including tangible employment actions, as a result of acts in further of a conspiracy created and maintained in violation of 42 U.S.C. § 1985( 3).

*Ad damnum*

**WHEREFORE,** Plaintiff prays that the following relief be awarded against Defendants Mathews, Ferguson, Grant, Naylor, Hargrove, Clyburn, and Abrams, jointly and severally, in their respective individual capacities:

199.   An award to Plaintiff of compensatory damages in the amount of ONE-MILLION-DOLLARS ($1,000,000);

200.   An award of punitive damages in the amount of FIVE-HUNDRED-THOUSAND-DOLLARS ($500,000);

201.   An award of back pay in an amount equal to the earned income lost by Plaintiff from January 3, 2014, through the date of a judgment entered in her favor on the instant Count;

202.   An award of front pay calculated from January 3, 2014;

203.   An award to Plaintiff of her reasonable attorney fees and costs, pursuant to and to the extent allowed by 42 U.S.C. § 1988;

204.   Such other and further relief as to which Plaintiff may be entitled pursuant to F.R.Civ.P. 15(b) on the basis of all evidence before the court at the time a judgment is rendered herein; and

205.   Such other and further relief that this Court may deem appropriate and just.

206. During his tenure as Administrative Judge as aforesaid, Defendant Hargrove was aware of the above-described, continuing conspiracy among Defendants Mathews, Ferguson, Grant, and Naylor and the continuing effects of that conspiracy that prevented, undermined, and/or compromised lawful reliance upon merit principles in District 1 personnel management and thus perpetuated a hostile work environment for at least a substantial proportion of the District 1 work force as aforesaid. Defendant Hargrove was aware that the above-described conspiracy furthered no legitimate interests, but was instead was created by Defendants Mathews and Ferguson means to further their own personal and nefarious interests in perpetuating a regime of discrimination upon the class of females who were subjected to *quid-pro-quo* sexual harassment and the class of males and females whose qualifications for advancement and/or enhancement of their employment-related interests were not considered because they were not candidates for sexual and/or romantic relationships with their superiors. Defendant Hargrove had authority, as Administrative Judge, to redress and cure, at least prospectively, the rampant repudiation and/or disregard of merit principles in District 1 personnel management that had a purposeful and continuing discriminatory impact as aforesaid. Defendant Hargrove knowingly and purposefully failed and refused to exercise his administrative and managerial authority to redress the above-described continuing conspiracy and its purposefully discriminatory impact upon the above-described classes.

**COUNT V (C5)**
**[Claim against Defendant Ben C.  Clyburn for "neglect of conspiracy"**
**in violation of 42 U.S.C. § 1986.]**

207.  Plaintiff hereby incorporates by reference the foregoing ¶¶ 2-143, , 184, and 185.

208. At all times pertinent hereto, Defendant Clyburn has been aware of the above-described conspiracy ("the subject conspiracy", hereinafter) among Defendants Mathews, Ferguson, Grant, Hargrove, Naylor, and Abrams and the continuing effects of the subject conspiracy that have supported and furthered unlawful *quid-pro-quo* sexual harassment and/or disparate-treatment discrimination on the bases of gender and race, as intended by the co-conspirators.  The subject conspiracy has substantially prevented, undermined, and/or compromised reliance upon merit principles in District 1 personnel management and thus has "polluted" with invidiously discriminatory personnel actions and decisions the working environment in District 1 for those employees other than beneficiaries of such personnel actions. A further goal and effect of the subject conspiracy has been the avoidance of imposition of appropriate disciplinary and/or legal sanctions upon the members of the subject conspiracy.

209.  Since being elevated to the position of Chief Judge of the Defendant District Court of Maryland, Defendant Clyburn has enjoyed plenary authority to remove from their respective positions of authority each of the individual Defendants who joined the subject conspiracy as aforesaid.

210.  On information and belief, the removal of Defendant Hargrove from the position of District 1 Administrative Judge was effected ordered and/or effected by the Chief Judge of the Court of Appeals of Maryland, Hon. Mary Ellen Barbera, despite and against the contrary urgings

and recommendations of Defendant Clyburn.

211.  On information and belief, the removal of Defendant Ferguson from the position of District 1 Administrative Clerk – by means of forced retirement – was ordered and/or effected by the Chief Judge of the Court of Appeals of Maryland, Hon. Mary Ellen Barbera, despite and against the contrary urgings and recommendations of Defendant Clyburn.

212.  Despite the removal as aforesaid of Defendants Hargrove and Ferguson from their respective positions, the subject conspiracy remained sufficiently active and viable to effect the ouster of Plaintiff from her subject employment by establishing and maintaining a hostile working environment that Plaintiff was unable to tolerate, and which no reasonable person could have tolerated.

213. Defendant Clyburn was aware that the subject conspiracy neither furthered nor supported any legitimate interests, but was instead a means by which members of the conspiracy furthered their own personal and nefarious interests in perpetuating a regime of *quid-pro-quo* sexual harassment and disparate-treatment discrimination on the bases of gender and/or race and their personal and nefarious interests in preventing the imposition of appropriate disciplinary and/or legal sanctions for acts and omissions by members of the subject conspiracy in furtherance of its agreed goals.

214.  At all times pertinent hereto from the time of his elevation to the position of Chief Judge of the Defendant District Court of Maryland, Defendant Clyburn was aware that the members of the subject conspiracy concertedly sought to cover up and prevent appropriate reporting and sanctioning of their unlawful acts and other acts of misconduct.

215.  On information and belief, Defendant Clyburn furthered the goal of the subject

conspiracy to cover up and prevent disclosure and sanctioning of the unlawful and other improper and unethical acts of the  members of the subject conspiracy by ordering a halt in an investigation by Administrative Judge Waxman as aforesaid.

216.  Defendant Clyburn had authority, as Chief Judge of the Defendant District Court of Maryland, to redress and cure, at least prospectively, the rampant repudiation and/or disregard of merit principles in District 1 personnel management that had been furthered and effected by members of the subject conspiracy in furtherance of the agreed goals of the subject conspiracy and which resulted proximately in purposeful and continuing invidious discrimination as aforesaid.

217.  Defendant Clyburn knowingly and purposefully failed and refused to exercise his administrative and managerial authority to redress and extinguish the subject conspiracy, which existed and was maintained and furthered in violation of 42 U.S.C. § 1985(3).

**Statement of claim presented in the instant Court.**

218.  By knowingly, purposefully, and corruptly failing and refusing to utilize his authority as Chief Judge of the Defendant District Court of Maryland to terminate and extinguish the above-described conspiracy that was created and perpetuated in violation of 42 U.S.C. § 1985(3), Defendant Clyburn violated 42 U.S.C. § 1986 and is personally liable, jointly and severally, to Plaintiff for appropriate remedies, including but not limited to compensatory and punitive damages.  Defendant Clyburn is liable in his official capacity as Chief Judge of the Defendant District Court of Maryland for such remedies as may be appropriate, including but not limited to reinstatement of Plaintiff to a position in a District other than District 1 that is comparable to the position occupied by her at the time of her constructive discharge.

*Ad damnum*

**WHEREFORE,** Plaintiff prays the following relief for the wrongs decried in the instant Count:

219.  An award of compensatory damages in the amount of FIVE-HUNDRED-THOUSAND-DOLLARS ($500,000) against Defendant Clyburn in his individual capacity;

220.  An award of punitive damages in the amount of FIVE-HUNDRED-THOUSAND-DOLLARS ($500,000) against Defendant Clyburn in his individual capacity;

221.  An award against Defendant Clyburn in his individual capacity of back pay in an amount equal to the earned income lost by Plaintiff since her constructive discharge was formalized by her resignation effective January 3, 2014;

222.  As an alternative to reinstatement, an award against Defendant Clyburn in his individual capacity for front pay in an amount equal to the future income the this court calculates that Plaintiff will lose as a result of the wrong decried in the instant Court.

223.  Issuance of an Order by this Court to compel Defendant Clyburn or his successor to exercise fully the administrative powers of his office to extinguish the subject conspiracy and to eradicate the effects of the invidious discrimination that the subject conspiracy has proximately caused.

224.  An award to Plaintiff of her reasonable attorney fees and costs, pursuant to and to the extent allowed by 42 U.S.C. § 1988;

225.  Such other and further relief as to which Plaintiff may be entitled pursuant to F.R.Civ.P. 15(b) on the basis of all evidence before the court at the time a judgment is rendered herein; and

226.  Such other relief as this court may deem appropriate and just.

## COUNT VI (C6)
### [Claim against Defendants Fergusons and Grant for discrimination on the basis of race in violation of 42 U.S.C. § 1981]

227.  Plaintiff hereby incorporates by reference the foregoing ¶¶ 2-143.

228.  Defendant Ferguson and Defendant Grant prevented Plaintiff from applying for appointment to a Supervisor 1 position (the "subject position") on grounds that Plaintiff lacked the requisite qualifications for the position.

229.  Marcy Goode, a black woman with lesser qualifications than Plaintiff, was selected for the subject position.

230.  But for Plaintiff's race, white, Defendant Ferguson and Defendant Grant would not have prevented Plaintiff from seeking the subject position.  Had Plaintiff sought appointment to the subject position and had the selection process for the subject position been free of invidious discrimination, Plaintiff would have been selected for it.

**Statement of claim presented in the instant Count.**

231.  On the basis of the facts presented herein, Defendant Ferguson and Defendant Grant are liable to Plaintiff for violating Plaintiff's right to be free from discrimination in employment on the basis of race.

***Ad damnum.***

**WHEREFORE,** Plaintiff prays the following relief against Defendants Ferguson and Grant, jointly and severally, in their individual capacities:

232.  An award of compensatory damages of ONE-HUNDRED-THOUSAND

DOLLARS ($100,000);

233.  An award of punitive damages of ONE-HUNDRED-THOUSAND DOLLARS

($100,000);

234.  An award to Plaintiff of her reasonable attorney fees and costs, pursuant to and to

the extent allowed by 42 U.S.C. § 1988;

235.  Such other and further relief as to which Plaintiff may be entitled pursuant to

F.R.Civ.P. 15(b) on the basis of all evidence before the court at the time a judgment is rendered

herein; and

236.  Such other and further relief that this Court may deem appropriate and just.

Date:  <u>February 26, 2014.</u>


/s/ GERARDINE M. DELAMBO,
  Attorney for Plaintiff
Bar No. 28175
705 Deepdene Road
Baltimore, MD 21210
410-433-1132; 443-617-0674 (fax)
sparky4242@comcast.net

# VERIFICATION

I HEREBY AFFIRM under penalties of perjury and, unless otherwise indicated, on personal knowledge that the foregoing averments of fact are true and correct.  I FURTHER AFFIRM under penalties of perjury that those foregoing averments of fact that are beyond my personal knowledge are true and correct to the best of my knowledge, information, and belief.

DATED:  February 26, 2014.

KIM K.  SUMNER, Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of February, 2014, a copy of the foregoing Proposed Amended Complaint was served electronically upon Defendant's counsel, Michele J. McDonald, Assistant Attorney General, at mmcdonald@oag.state.md.us.


/s/ GERARDINE M. DELAMBO

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

**KIM K. SUMNER,**

    **Plaintiff,**

    **v.**                               **CIVIL ACTION NO. 1:13-cv-00539**

**MARYLAND JUDICIARY /**
**DISTRICT COURT OF MARYLAND,**

    **Defendant.**

**o0o**

## PRAYER FOR JURY TRIAL

Plaintiff, Kim K.  Sumner, by her undersigned counsel, hereby prays that all claims raised in her proposed amended complaint be tried by a jury.

Date:  <u>February 26, 2014.</u>

/s/ GERARDINE M. DELAMBO,
  Attorney for Plaintiff
Bar No. 28175
705 Deepdene Road
Baltimore, MD 21210
410-433-1132; 443-617-0674 (fax)
sparky4242@comcast.net

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this <u>26th</u> day of February, 2014, a copy of the foregoing Prayer for Jury Trial was served electronically upon Defendant's counsel, Michele J. McDonald, Assistant Attorney General, at mmcdonald@oag.state.md.us.

/s/ GERARDINE M. DELAMBO