IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

KIM K. SUMNER,

     **Plaintiff,**

     **v.**                    **CIVIL ACTION NO. 1:13-cv-00539-JRG**

MARYLAND JUDICIARY /
DISTRICT COURT OF MARYLAND,
*et al.,*

     **Defendants.**

o0o

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

     Plaintiff, Kim K.  Sumner, by undersigned counsel, presents the following points and

authorities in opposition to the Defendants' "Motion to Dismiss, or, in the alternative, for

Summary Judgment" ("MD-SJ", hereinafter) (ECF 58 and attachments, under proposed seal, as

superseded by ECF 63 and attachments[1]).  Plaintiff requests that all relief thus sought by

Defendants be denied, or, in the alternative, that the court's determination of the relief, if any, to

be granted to Defendants should await the filing, as of right, of Plaintiff's Second Amended

---

[1] ECF 63-1 is the "redacted" memorandum in support of the MD-SJ that presents the
arguments addressed herein.

Complaint on or before July 29, 2014.[2]  Plaintiff submits further, as argued in detail *infra*, that

Defendants' motion should *not* be converted to one for summary judgment.

**ARGUMENT.**

**1.  Defendants' "Motion to Dismiss or, in the alternative, for Summary Judgment" should be determined by the court in accord with the standard for F.R.Civ.P. 12(b)(6).**

Plaintiff is unable to identify any of the materials submitted with Defendants' subject

motion that would be probative of any issue that can be disposed of on summary judgment.

Therefore Plaintiff urges that Defendants' subject motion be considered by the court as one for

dismissal, pursuant to F.R.Civ.P. 12(b)(6).

Materials in the exhibits that may appear to be probative of Plaintiff's claim that she was

subjected to a racially discriminatory nonselection are not as probative of that claim as they may

appear, and certainly determinative.   Indeed, there is no evidentiarily competent explanation in

the materials submitted with Defendants' subject motion of *when* an assertedly discriminatory

---

[2]  Plaintiff is permitted to amend as of right pursuant to F.R.Civ.P. 15(a)(1)(B), but undersigned counsel is not yet certain as to when the period for Rule 15(a)(1)(B) amendment commenced – *i.e.*, whether it began with the service on (or shortly after) July 8 of Defendants' initial motion or on July 10 with the filing of superseding and supplemental materials.  The above-cited Rule provides as follows:

> Rule 15. Amended and Supplemental Pleadings
> (a) Amendments Before Trial.
> (1) Amending as a Matter of Course. **A party may amend its pleading once as a matter of course within:**
> **\* \* \* (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.**

[Emphasis supplied.]   *See*, also, *Brumfield v. McCann*, 2013 U.S. Dist. LEXIS 33107 (S.D.WV; Goodwin, J.)

selection occurred; instead, there are documents showing the application of the individual named in the Amended Complaint at ¶ 124 and the vacancy announcement, but nothing more.  Which is curious, because the individual who authenticates these records would obviously have access to documentation indicating the timing of the selection.

Undersigned counsel proffers her present understanding of Plaintiff's racially discriminatory nonselection claim:  Somewhat contrary to the account  presented in the Amended Complaint, Plaintiff and the individual who, as related in the Amended Complaint at ¶ 124, was selected for but declined appointment to a Supervisor 1 position within District 1 (Baltimore City) of the District Court of Maryland *did not apply for the same vacancy*, and thus their respective qualifications were never put into direct competition.  Rather, Plaintiff *inquired* about a Supervisor 1 position in or around September of 2011, but, as noted by Defendants, did not formally apply for any Supervisor 1 position, because she was told by Defendant Grant that she was not qualified for a Supervisor 1 position.  Plaintiff understood Defendant Grant's admonition to mean that only individuals who had actually worked in a *courtroom* were eligible for consideration for the position in question, and Plaintiff believed that the individual referred to ¶ 124 had experience working in support positions but not working in an actual courtroom.  Thus Plaintiff believed that inasmuch as she, too, had worked in judicial support capacities for more than the requisite three years, Attachment J to ECF 63-4,  at (unnumbered) page 31, and thus met the threshold qualification for appointment to a Supervisor 1 position, her extensive private-sector employment history would come into play.  Whether, in fact, Plaintiff was more qualified for a Supervisor 1 position is a fact question, of course, that cannot properly be resolved on summary judgment.  Nor, without discovery concerning the qualifications of the individuals who

competed for the vacancy that Plaintiff inquired about, can it be determined whether in fact

Plaintiff would have been appointed to a Supervisor 1 position had she applied.  Thus the

materials submitted by Defendants concerning Plaintiff's nonselection and the selection of the

individual named in ¶ 124 need not be considered by the court inasmuch as summary judgment

on this claim cannot be awarded to either side, even after needed discovery,[3] because of the

respective qualifications of applicants to the position in question pose a quintessential dispute of

material fact.

**2.  To avoid any suggestion of waiver or acquiescence, Plaintiff renews her objection to Defendants' filing of a F.R.Civ.P. 12(b)(6) motion and requests reconsideration of the denial of her motion seeking to enforce the Order granting the parties' joint motion to permit Defendants to file a "consolidated responsive pleading", a term that does not encompass a motion.**

The court denied, by Order (ECF 70) entered on July 21, Plaintiff's motion to enforce the

Order of May 6 (2014) (ECF 53) that granted the parties' joint motion to permit Defendants to

file a "consolidated responsive pleading" on or before July 7.  Local Rule 105.10 (2014) permits

a party to file a motion to reconsider within 14 days after entry of an order.  Plaintiff so moves.

In addition to the point discussed in her unsuccessful motion, Plaintiff notes that the joint

motion reflected an agreement among the parties.  While that agreement was not binding on the

Court, it is nevertheless troubling that Plaintiff now finds herself in a circumstance that

undersigned counsel could not have foreseen when she agreed to the joint motion.

---

[3] As a precaution, undersigned counsel may file an affidavit pursuant to F.R.Civ.P. 56(d) to identify the discovery needed in the event the court concerts Defendants' motion to one for summary judgment, pursuant to F.R.Civ.P. 12(d).

It is impossible to discern what reasoning supports the court's denial of Plaintiff's motion.  But Plaintiff submits that it is indeed "axiomatic" that a motion is not, in federal practice, a "pleading".  The Fourth Circuit has so held at least twice, in *Mellon Bank, N.A. v. Ternisky*, 999 F.2d 791, 795, 26 Fed. R. Serv. 3d (Callaghan) 546, 1993 U.S. App. LEXIS 19201 (4th Cir.  1993) ("In response to the complaint, Mellon filed a Rule 12(b)(6) motion to dismiss, which is not a pleading", citing Fed. R. Civ. P. 7, 12), and *Smith v. Blackledge*, 451 F.2d 1201, n2 (4th Cir.  1971) ("The motion to dismiss was not a responsive pleading for the purpose of Rule 15(a))**.**   Numerous decisions of district courts within the Fourth Circuit have concluded similarly: E.g., *Lacey v. Braxton,* 2011 U.S. Dist. LEXIS 84313 at 19,  2011 WL 3320801, Civil Action No. 7:10-cv-00139, Aug.  1, 2011) (W.D.VA 2011); *Structural Concrete Prods., LLC v. Clarendon Am. Ins. Co.,* 244 F.R.D. 317, 324 (E.D.VA 2007); *Oliver v. Omega Protein, Inc.* 2011 U.S. Dist. LEXIS 27621 (E.D.VA 2011); *Williams v. Lendmark Fin. Servs.*, 2014 U.S. Dist. LEXIS 40087; Buffalo Wings Factory, Inc. v. Mohd, 574 F. Supp. 2d 574, 578 (E.D.VA 2008) 1:07cv612 (JCC).  Undersigned counsel has found no decisional or codified authority to the contrary.

Whether Defendants' filing of a motion instead of a "consolidated responsive pleading" will make any difference after the filing of a Second Amended Complaint remains to be seen. Consequences of this seeming departure from the pertinent rules cannot be fully gauged at this juncture, at least not by undersigned counsel, who recognizes that the answer to this question may very well be the reason for the court's denial of Plaintiff's motion.

**3.  The U.S. Supreme Court's ruling, in *Pennsylvania State Police v. Suders,* 542 U.S. 129 (2004) recognizing that the intolerability required for a constructive discharge can be caused by coworkers, should operate to overrule the Fourth Circuit's requirement that constructive discharge claimants must show "deliberateness" on the part of the employer.**

In their MD-SJ memorandum at 26, *et seq.*, Defendants cite Fourth Circuit authorities

requiring that a constructive discharge claimant show "deliberateness" on the part of the

employer:

> To prove deliberateness, the plaintiff must prove 'that the actions complained of were intended by the employer as an effort to force the employee to quit." Citing *Honor v. Booz-Allen & Hamilton, Inc.,* 383 F.3d 180, 187 (4th Cir. 2004), and *Whitten v. Fred's, Inc.,* 601 F.3d 231, 248 (4th Cir. 2010) (quoting *Martin v. Cavalier Hotel Corp.,* 48 F.3d 1343, 1354 (4th Cir. 1995).

But Justice Ginsburg, writing for the majority in *Pennsylvania State Police v. Suders,* 542 U.S.

129 (2004), explained:

> [Sexual] harassment so intolerable as to cause a resignation may be effected **through co-worker conduct, unofficial supervisory conduct, or official company acts. Unlike an actual termination, which is always effected through an official act of the company, a constructive discharge need not be. A constructive discharge involves both an employee's decision to leave and precipitating conduct: The former involves no official action; the latter, like a harassment claim without any constructive discharge assertion, may or may not involve official action.**

[Emphasis supplied.]    *Id.,* 542 U.S. at 148.

While noting the "tension" between Fourth Circuit jurisprudence and that of the Supreme Court, courts in this Circuit continue to adhere to the "deliberateness" standard.[4]  See, *Carter v. Centura College*, 2012 U.S. Dist. LEXIS 25566 at 31-32 (D.SC 2012):

> The Fourth Circuit Court of Appeals has acknowledged that its

---

[4]  *Indeed, in at least one* constructive discharge *case, Robinson v. BGM Am., Inc.,* 964 F. Supp. 2d 552, 2013 U.S. Dist. LEXIS 112726 (D.SC 2013), the court failed to mention *Suders* at all, evidently because that case did not involve an assertion of intolerability based upon *sexual* harassment.

requirement that the plaintiff prove the employer intended  [32] to force the
plaintiff to quit is arguably in some tension with the Supreme Court's decision in
Pennsylvania State Police v. Suders, 542 U.S. 129, 124 S. Ct. 2342, 159 L. Ed. 2d
204 (2004) . . . [where] the Court described constructive discharge as "a 'worse
case' harassment scenario, harassment ratcheted up to the breaking point," and
held that a constructive-discharge plaintiff must prove that her working conditions
were "so intolerable that a reasonable person would have felt compelled to
resign."

Whitten, 601 F.3d at 248 n.8 (citations omitted) (quoting Suders, 542 U.S. at
147-48). Nevertheless, the Fourth Circuit has "continued to apply the
deliberateness requirement to constructive-discharge claims since Suders was
decided." Whitten, 601 F.3d at 248 n.8 (citing Heiko v. Colombo Savings Bank,
F.S.B., 434 F.3d 249, 262 (4th Cir. 2006)). Since the Fourth Circuit Court of
Appeals has not interpreted Suders to have dispensed with the deliberateness
requirement, the plaintiff must satisfy this element.

 Plaintiff submits that the above-quoted decisions are in irreconcilable conflict with Supreme

Court authority.

        This court has recognized, however, that employers are deemed to intend the

consequences of their actions.  Thus a course of conduct that *results* in intolerable working

conditions may satisfy that element of a constructive discharge:

Count Four of Plaintiff's Third Amended Complaint alleges constructive
discharge in violation of Title VII and FEPA by Defendant BPD. Pl.'s Third Am.
Compl. ¶ 41. In order to state a claim for constructive discharge, a plaintiff must
show that his employer "deliberately made [his] working conditions intolerable in
an effort to induce [him] to quit." Heiko v. Colombo Savings Bank, F.S.B., 434
F.3d 249, 262 (4th Cir. 2006) (quoting Matvia v. Bald Head Island Mgmt., Inc.,
259 F.3d 261, 272 (4th Cir. 2001)  [19] (internal quotation marks omitted)). Thus,
Plaintiff must establish (1) that his employer's actions were deliberate; and (2) that
a reasonable person would find the resulting work conditions intolerable. Id.
(citing Honor v. Booz-Allen &, Inc., 383 F.3d 180, 186-87 (4th Cir. 2004)).

In his Third Amended Complaint, Plaintiff attempts to rectify the shortcomings
with respect to adequately pleading each element of his constructive discharge
claim. Plaintiff must first allege that Defendant BPD's actions were intended to
force Plaintiff to quit." Id. (citing Matvia, 259 F.3d at 272 (4th Cir. 2001).
Deliberateness may be established by "actual or circumstantial evidence, including

evidence of actions that single a plaintiff out for differential treatment." Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994); see also Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1354 (4th Cir. 1995) ("**[E]vidence that the employer failed to act in the face of known intolerable conditions and did not treat all employees identically may create an inference that the employer was attempting to force the plaintiff to resign.**") (citing Paroline v. Unisys Corp., 879 F.2d 100, 114 (4th Cir. 1989) (Wilkinson, J., dissenting),  [20] vacated in part, 900 F.2d 27, 28 (1990) (en banc) (adopting the dissent from the panel opinion)). **The Fourth Circuit has held that an employer must "necessarily be held to intend the reasonably foreseeable consequences of its actions." Martin, 48 F.3d at 1355 (4th Cir. 1995).**

**In his Third Amended Complaint, Plaintiff alleges that his resignation was a reasonably foreseeable result of Defendants' (1) blatant neglect of and disregard for his health and safety concerns, (2) issuance of a poor performance review in the week following the incident, and (3) discriminatory assignment of foot details, vacation days, and overtime hours.** Pl.'s Third Am. Compl. ¶ 40. **Thus, Plaintiff adequately alleges that he was singled out for differential treatment to an extent allowing a plausible inference that the BPD intended to force Plaintiff to quit.**

[Emphasis supplied.]   *Brown v. Balt. Police Dep't*, 2012 U.S. Dist. LEXIS 165378, at 18-20

(D.MD 2012) (Bennett, J.).

Certainly the listing of factors that are asserted in the Amended Complaint to have

created the intolerability that compelled t he Plaintiff here to resign from her subject employment

are at least equivalent to those referred to by judge Bennett in the *Brown* decision:

138.  On or about December 21, 2013, Plaintiff submitted her resignation from the employ of the Defendant State of Maryland, in response to the events described herein and the intolerability of the conditions of her employment, including but not limited to the following:

i. A history of systemic discrimination in District 1 personnel matters that "so heavily polluted" the working environment of Plaintiff that her "emotional and psychological stability" was seriously compromised.  The aforesaid history left a continuing legacy of dysfunction and corruption of merit principles, so that only the beneficiaries of that history enjoy security in their employment, as illustrated by the events described herein;

ii.  the discriminatorily and corruptly lenient disciplining of Defendant Ferguson;

[Page 8 of  14]

iii.  Defendant Ferguson's acquiescence to his administrative assistant's operation of a private business out of her (and Defendant Ferguson's) office and the failure of the Administrative Office of the Maryland Courts to respond to Plaintiff's complaint about this misconduct;

iv.  the discriminatory denial of an opportunity for Plaintiff to seek promotion to a supervisor 1 position;

v.  the racially discriminatory interference with a white accounting supervisor's management of his unit,

vi.  Defendant Grant's severe chastising of white supervisor for hiring three qualified white applicants on the sale basis of their qualifications and merit;

vii.  Rejection, or disregard, by the OFP of Plaintiff's complaint of lack of diversity in District 1;

viii. Defendant Mathews' unsanctioned comment that he didn't "give a fuck" about the impact of his misconduct;

ix.  Administrative Judge Rinehardt's inability to oust Defendant Ferguson from his position after he had committed serious misconduct.

x.  A failure by District 1 judges to discharge their ethical duty to report Defendant Mathews' misconduct and the continuing effect of this profound failure of ethics, in an institution charged with the administration of public justice.

xi.  A demonstrated lack of effective protections against unlawful retaliation for protected activities, as a result of an extensive history of disqualifying misconduct by those charged with implementation and enforcement of the protections that the Defendant Maryland Judiciary has purported to put in place, and the willingness of the leadership of the Defendant Maryland Judiciary to compromise the opportunity of those complaining of violations of their legal rights to seek effective redress outside of the Maryland Judiciary.

xii.  Toleration by the leadership of the Defendant Maryland Judiciary of many years of misconduct by Defendant Ferguson, by allowing him to continue to be employed as Administrative Clerk after three incidents of serious misconduct, and the decision by the leadership of the Defendant Maryland Judiciary to "hide" Defendant Ferguson at a secret worksite to shelter him from the public and the media while maintaining his salary of $115,000 per year.

xiii.  Continued demonstrations of unrelenting hostility toward Plaintiff by Defendant Naylor, including but not limited to Defendant Naylor's continued interference with Plaintiff's performance of her job, usurpation of job functions that were listed in Plaintiff's position description and which had previously been performed by Plaintiff, and excessive scrutiny of Plaintiff's activities, as aforesaid, with no reasonable expectation that such adverse treatment ever would cease, even after Plaintiff reported this treatment to Defendant Abrams.  Plaintiff's dismay and despair over her treatment by Defendant Naylor was exacerbated by Plaintiff's knowledge that Defendant Naylor had continued her abusive behavior toward Plaintiff with the knowledge of several managerial

employees, and that the abusive behavior had not diminished during a three-year period.  Continuing through December 21, 2013, Plaintiff was aware also that Defendant Naylor had never hired a white person and had blatantly discriminated against whites in selecting demonstrably less qualified blacks.  Plaintiff was aware further that no one in a leadership position with the Defendant District Court of Maryland had made any attempt to curb the pattern of racially discriminatory selections made by Defendant Naylor or Defendant Naylor's unlawfully retaliatory and abusive treatment of Plaintiff.

xiv.  The impact upon Plaintiff's personal health and well being of continued stress, anxiety, and outrage; Plaintiff's perception of unredressed and unredressable injustice; and Plaintiff's reasonable and rational apprehension that her employment was continually at risk of being terminated without cause.

xv.  Plaintiff's perception and belief that meaningful change was unlikely to occur in District 1 in view of the apparent choice of the leadership of the Defendant Maryland Judiciary to maintain the *status quo*.

xvi.  Plaintiff's reasonable belief that she could not secure meaningful review of a complaint of judicial misconduct.

Amended Complaint at 66-68.

Plaintiff notes further that is at least an inference that she resigned, at least in substantial part, as an act of conscience: part of the stress she experiences was continually observing – and as the District 1 Human Resources Associate, providing support for – the unjust, discriminatory, and corrupt acts of her superiors.  How is it, then, that on the basis of their "sincere religious beliefs" the owners of a closely held corporation that operates 500 stores are allowed to deprive the company's female employees of reproductive health services, but Plaintiff, reared a Catholic and still respectful of her religious values, could be offered no legal relief after she terminated an employment relationship in which she was constantly faced with immoral acts of her superiors?  *See*, *Burwell v. Hobby Lobby Stores, Inc.*, 189 L. Ed. 2d 675, 123 Fair Empl. Prac. Cas. (BNA) 621, 24 Fla. L. Weekly Fed. S 965, 2014 WL 2921709,  2014 U.S. LEXIS 4505.

**4.  Plaintiff has begun the process of satisfying the administrative prerequisite for prosecuting her constructive discharge claim against the State Defendants.**

Submitted herewith are exhibits consisting of an initial and amended complaint filed with the Maryland Commission on Civil Rights ("MCCR") on June 18, 2014 – the 180th day after she transmitted her notice of resignation to Defendant Mary Abrams.  Plaintiff presumes that this court can take judicial notice of the "work-sharing" agreement between the EEOC and the MCCR, which will allow Plaintiff to secure a notice of right to sue from the EEOC on an expedited basis.

**5.  The Amended Complaint presents an adequate factual basis for equitable tolling of the period for filing Plaintiff's initial complaint of discrimination and retaliation with MCCR.**

The Amended Complaint, at ¶ states:

58.  The statement of "Policy on Equal Employment Opportunity and Harassment" issued and published by the Defendant Maryland Judiciary states, at page 8, ¶ IX:

> **IX.  Right to File a Complaint with Other Agencies**
> The Office of Fair Practices shall inform the aggrieved individual of the right to file a complaint with the Maryland Human Relations Commission or the Equal Employment Opportunity Commission if the complainant is dissatisfied with the findings and recommendations of the Office of Fair Practices.

Thus the above-quoted language allows the Office of Fair Practices ("OFP", hereinafter) to fail or refuse to inform complainants that the time for filing complaints with such "other agencies" continues to run during the pendency of an investigation by the OFP. * * *

151. * * * ii.  The OFP affirmatively misled Plaintiff as to the requirements of timely filings of complaints with the MCCR and the EEOC;

In sum, Defendants cannot legitimately complain about the timing of Plaintiff's filing of an administrative complaint with the MCCR.

**6.  The Amended Complaint adequately presents facts showing that the cumulative effects of the sexual harassment and other adverse treatment experienced by Plaintiff, which were lacking in "discrete" events, constituted a continuing violation of her right to work in an environment free of discrimination and retaliation.**

A hostile work environment typically presents a continuing violation:

> In AMTRAK v. Morgan, 536 U.S. 101, 122, 153 L. Ed. 2d 106, 122 S. Ct. 2061 (2002), the Supreme Court explained that a "hostile work environment claim is comprised of a series of separate acts that collectively constitute one unlawful employment practice.'" Based on that premise, the Court held that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory period." Id. at 105; see also id. at 116 ("Provided that an act contributing to a claim occurs within the filing period, the entire time period of the hostile environment may be considered by the court for the purposes of determining liability.").

The above passage was quoted by this court in *Moret v. Harvey*, 381 F. Supp. 2d 458, 468-469

(D.MD 2005.

In Plaintiff's case, the sexual harassment found by the Maryland Judiciary's Office of Fair

Practices ("OFP") occurred over a period of months and then was followed by intense retaliatory

harassment, particularly by Defendant Haylor.  The sexual harassment was decribed, at ¶ 81, as a:

> continuing attempt – beginning and continuing with Defendant Ferguson's daily loitering in Plaintiff's office and including the pornographic DVDs that he gave her – to develop a more intimate relationship with her, which was intended by Defendant Ferguson to lead to a *quid-pro-quo* sexual relationship with an implied threat of reprisal if Plaintiff resisted.  Plaintiff continued to resist, passively, this attempt by Defendant Ferguson to invade her personal sovereignty and exploit the power and prestige of his office to dominate Plaintiff on a personal level. Defendant Ferguson's continued loitering in Plaintiff's office was unwelcome and in no way invited by Plaintiff, as was Defendant Ferguson's use of vulgar and inappropriate language as aforesaid.

[Page 12 of  14]

Similarly, the harassment inflicted upon Plaintiff by Defendant Naylor was described in the Amended Complaint as follows:

> xiii.  Continued demonstrations of unrelenting hostility toward Plaintiff by Defendant Naylor, including but not limited to Defendant Naylor's continued interference with Plaintiff's performance of her job, usurpation of job functions that were listed in Plaintiff's position description and which had previously been performed by Plaintiff, and excessive scrutiny of Plaintiff's activities, as aforesaid, with no reasonable expectation that such adverse treatment ever would cease, even after Plaintiff reported this treatment to Defendant Abrams.  Plaintiff's dismay and despair over her treatment by Defendant Naylor was exacerbated by Plaintiff's knowledge that Defendant Naylor had continued her abusive behavior toward Plaintiff with the knowledge of several managerial employees, and that the abusive behavior had not diminished during a three-year period.  Continuing through December 21, 2013, Plaintiff was aware also that Defendant Naylor had never hired a white person and had blatantly discriminated against whites in selecting demonstrably less qualified blacks.  Plaintiff was aware further that no one in a leadership position with the Defendant District Court of Maryland had made any attempt to curb the pattern of racially discriminatory selections made by Defendant Naylor or Defendant Naylor's unlawfully retaliatory and abusive treatment of Plaintiff.

**7.  The Amended Complaint adequately pleads the exceptions to the intra corporate immunity doctrine.**

Ordinary, a corporate or other institutional entity cannot conspire with its own employees or agents, since their actions are deemed to be actions of the entity.  But when employees or agents act in furtherance of their own, personal interests and in no way further – and do not intend to further – the interests of the entity, the immunity from conspiracy liability is lost.

> There are, however, two important exceptions to the doctrine. First, it is generally inapplicable "where a co-conspirator possesses a personal stake independent of his relationship to the corporation." ePlus Tech., 313 F.3d at 179; see also Greenville Publ'g Co. v. Daily Reflector, Inc., 496 F.2d 391, 399 (4th Cir. 1974). Second, a plaintiff may state a conspiracy claim where the agent's acts were not authorized by the corporation. Busch [v. Kirven, 775 F.2d 1240, 1252 (4th Cir. 1985).] 775 F.2d at 1252-53.

[Page 13 of  14]

*Painter's Mill Grille, LLC v. Brown,* 716 F.3d 342, 353 (4th Cir.  2014).

**8.  The Amended Complaint provides a substantial, fact-intensive basis for the court to conclude that it is plausible that the wrongs decried were actually perpetrated as alleged by Plaintiff.**

The Twombly-Iqbal pleading standard is plainly met by the presentation of facts in the

Amended Complaint.  Defendants' challenge exploits the inherent difficulty in providing details

of mental processes beyong stating the nature of the impermissible animus and the asserted

results of actions assertedly taken in furtherance of that animus.

**CONCLUSION.**

For the foregoing reasons, Plaintiff submits that the Defendants motion must be denied in

its entirety.

Date:  July 24, 2014


/s/ GERARDINE M.  DELAMBO,
   Attorney for Plaintiff
Bar No. 28175
705 Deepdene Road
Baltimore, MD 21210
410-433-1132; 443-617-0674 (fax)
sparky4242@comcast.net

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 24th day of July, 2014, a copy of the foregoing
Opposition to Defendants' motion to dismiss was served electronically, via the Court's electronic
filing system, upon Defendant's counsel, Michele J. McDonald, Assistant Attorney General, at
mmcdonald@oag.state.md.us.

/s/ GERARDINE M. DELAMBO