IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

**KIM K. SUMNER,**

    **Plaintiff,**

    v.                                          CIVIL ACTION NO. 1:13-cv-00539-JRG

**MARYLAND JUDICIARY /
DISTRICT COURT OF MARYLAND,**
*et al.*,

    **Defendants.**

o0o

**PLAINTIFF'S MOTION TO DISALLOW DEFENDANTS' RESPONSE TO MOTION
FOR MEDIATION BECAUSE OF CONFLICT OF INTEREST; RENEWED
MOTION TO STAY DETERMINATION OF DEFENDANT'S PENDING
MOTION TO DISMISS OR, IN THE ALTERNATIVE,
FOR SUMMARY JUDGMENT**

Plaintiff, Kim K. Sumner, by undersigned counsel, continues to seek to resolve all of her claims through mediation. To that end, Plaintiff requests (1) that Defendants' response (ECF 99) to her motion for referral for mediation (ECF 97) – which withholds Defendants' agreement to mediate until a determination of their motion to dismiss or for summary judgment (ECF 92, or "Defendants' pending motion", hereinafter) – be disallowed on the ground of a manifest conflict between the interests of the Defendant State of Maryland and the interests of the individual Defendants herein and the putative Defendants in the impending State case, as particularized *infra*; and (2) that determination of Defendant's pending motion be STAYED pending resolution of the above-referenced conflict of interest and a ruling, if necessary on Plaintiff's referral motion.

[Page 1 of 11]

**A. A conflict between the interests of the Defendant State of Maryland and the interests of the individual Defendants herein and the putative defendants to be named in an action to be filed in the Circuit Court for Baltimore County or Baltimore City warrants the court's disallowance of the response of the Defendants herein to Plaintiff's request for referral of the instant case to mediation, at least until the conflict of interest is resolved to the satisfaction of the court.**

Undersigned counsel is aware of information received from at least two reliable sources to the effect that Angela Naylor, who was named as an individual Defendant in the amended complaint filed herein (ECF 40-1) but not in Plaintiff's current pleading (the second amended complaint, ECF 89), revealed to one or more coworkers that she had been "'directed to isolate'" Plaintiff.[1]  As averred in Plaintiff's pleadings, Ms. Naylor, supervisor of personnel assigned

---

[1] If the parties cannot reach an agreement to seek immediate referral for mediation, Plaintiff will conduct deposition discovery in an effort to establish as a matter of record the truth of the assertion herein concerning the reported admission of Ms. Naylor.  Plaintiff notes further that informal investigation by undersigned counsel has been thwarted by Defendants' counsel's objection to undersigned counsel conducting *ex parte* interviews of any State employee concerning the subject matter of the instant case, with a threat to seek sanctions if undersigned counsel does so.  Here are the actual words of Defendants' counsel in that regard:

> The issue of the control group goes to whether attorney client privilege attaches to a communication between corporate counsel and someone in a corporation / agency.  **If you are suggesting that you may have ex parte communications with state employees, I object to the plaintiff conducting informal interviews with employees of the State in regard to the subject matter of this case, and reserve all rights to take action if you nonetheless conduct such interviews, including seeking sanctions.** * * *

> You should also be aware that **the Office of the Attorney General may represent a state employee in a deposition.  An employee is not required to be represented in a deposition but most employees are.  Where the interest of the State Defendant might be adverse to that of the state employee deponent, e.g., where the deponent may become a defendant, an attorney from another division (outside the subject litigation) may be provided.**

[Emphasis supplied.] Email from Defendant's counsel to undersigned counsel.  ECF 99-2.

Note further that although Defendants' counsel seems to acknowledge that there may be a

―――――――――――――

conflict between the interests of a "[S]tate employee deponent" and the interests of "the State defendant", and that in such cases a member of the Attorney General's Office from another Division represents the employee deponent, there has been no suggestion that this practice would be followed in the instant case.

Note further, however, that *Maryland Code,* State Govt. Art., Sec. 12-304 prescribes a totally different regime for the OAG to represent State employees:

> § 12-304. Appearance of Attorney General
>
>   (a) Appearance for officer or employee. --
>
>   (1) Except as otherwise provided in this Part II of this subtitle, the Attorney General shall appear in a civil action or special proceeding **against a State officer or State employee to represent the officer or employee if:**
>
>     **(I) the action or proceeding is in a court of the State or of the United States;**
>
>     **(ii) the officer or employee submits to the Attorney General a written request for representation;**
>
>     **(iii) the Attorney General or a person whom the Attorney General designates investigates the facts on which the action or proceeding is based;**
>
>     **(iv) the Attorney General does not find the officer or employee ineligible for representation under subsection (b)(1) of this section;** and
>
>     (v) the officer or employee enters into an agreement as required by § 12-305 of this subtitle.
>
> * * *
>
> (b) Exceptions. --
>
>   **(1) The Attorney General shall decline to represent a State officer or State employee if, on the basis of the investigation, the Attorney General finds that:**
>
>     **(I) the officer or employee was not acting within the scope of employment of the officer or employee;**
>
>     **(ii) the act or omission was malicious; or**

to the Borgerding District Courthouse in Baltimore City from the fall of 2010 until her resignation in 2014, engaged in an unrelenting campaign of harassment of Plaintiff that included usurpation of Plaintiff's job functions; openly keeping a log of Plaintiff's activities, although Ms. Naylor was never Plaintiff's supervisor; directing that other employees not communicate with Plaintiff or enter Plaintiff's office; and disparaging Plaintiff as incompetent. ("She don't know nothin'.")  Ms. Naylor's above-described harassment of Plaintiff seriously interfered with Plaintiff's performance of her remaining job functions – those not usurped by Ms. Naylor – as the Human Resources Associate for the 400 employees in District 1 (Baltimore City) of the Defendant District Court of Maryland.[2]

As also averred in her pleadings, Plaintiff complained in mid-2010 to her immediate supervisor, Deputy Administrative Clerk Lavon Grant,[3] that Defendant Lonnie Ferguson, the Administrative Clerk of District 1 (and thus the District's senior administrative employee) for many years until his retirement on or about November 1, 2013, had engaged in conduct toward Plaintiff that eventually was determined, by the Office of Fair Practices ("OFP") of the Maryland Judiciary, to have constituted sexual harassment.[4]  But, out of fear of reprisal, Plaintiff requested

---

**(iii) the act or omission was grossly negligent.**

[Emphasis supplied.]

[2]  Plaintiff's performance appraisals consisted rated her work as "exceeds".

[3]  As was Ms. Naylor, Ms. Grant was named as a Defendant in the amended complaint filed herein, but not in the current pleading.

[4]  That conduct consisted of giving Plaintiff grossly pornographic DVDs, loitering in Plaintiff's office, directing Plaintiff to order men's underwear from internet venders for him, and profligate use of vile, expletive-filled, and degrading language in Plaintiff's presence.

that Ms. Grant not report further the conduct of Defendant Ferguson toward Plaintiff. Plaintiff's complaint to Ms. Grant predated Ms. Naylor's assumption of the duties of supervisor at the Borgerding Courthouse. Ms. Naylor was hired for the foregoing position on the recommendation of Defendant Ferguson. Ms. Grant was promised by Defendant Ferguson that she would succeed him as District 1 Administrative Clerk.

In February, 2011, Plaintiff, fearing that she was being set up for discharge, filed a complaint concerning Defendant Ferguson's conduct toward her with the OFP, which in August of that year issued findings that Defendant Ferguson had sexually harassed Plaintiff. Although he had been disciplined twice previously for misconduct involving female employees, Defendant Ferguson was suspended without pay for 30 days, contrary to the progressive discipline policy of the Defendant Maryland judiciary. Later – after media coverage of the instant action – Defendant Ferguson was allowed to work in an unknown location where he would not be seen by the public or the media.

On November 18, 2014, Plaintiff filed a motion for referral to mediation, pursuant to Local Rule 607, to urge that the court's unexplained denial of the parties' joint motion for referral had been error. Defendant's response was to oppose referral until their motion to dismiss was determined.

Plaintiff's principal claims – the continuing course of harassment by Ms. Naylor that is described above and a constructive discharge resulting mainly form Ms. Naylor's actions – have been removed from the instant case in favor of prosecuting parallel State-law claims in State court. Ms. Naylor and Ms. Grant are no longer Defendants in the instant case. But Plaintiff is in the peculiar position of being forced to defend against Defendants' motion in order to avoid the

risk of attachment of preclusive effect to the dismissal of claims that she no longer wishes to pursue.  F.R.Civ.P. 41(a)(2) naturally comes to mind, but there is yet another constraint: If the court dismisses the federal claims without prejudice and then declines to exercise supplement jurisdiction, that would free Plaintiff to prosecute her case in State court, but such a development also would likely extinguish the best possibility of a prompt and (relatively) inexpensive resolution of this entire controversy: mediation in *this* court.  Furthermore, it would appear that the expense and effort required to resolve Defendant's motion – if transferred to the mediation process – might well be sufficient to reach a global settlement of all claims and defenses, including those that would otherwise be raised in the impending State proceeding.

Given that Ms. Naylor and Ms. Grant are not parties in the instant case but would face substantial claims in the impending State proceeding, it is difficult to imagine that their interests were considered when Defendants opposed the referral motion.  Moreover, Defendant Ferguson would appear to be deeply implicated in Ms. Naylor's statement that she was "directed to isolate" Plaintiff.  Indeed, the web of relationships described above – the relationship of Ms. Naylor and Defendant Ferguson leading to her appointment to a senior position and the intended succession of Ms. Grant to the position held by Defendant Ferguson – and his lengthy tenure suggest that Defendant Ferguson enjoyed considerable influence among District 1's administrative employees and was not just their titular superior.  Thus there is a strong inference that any directive issued by Ms. Grant to Ms. Naylor would have been known by Defendant Ferguson, if not initiated by him.  In sum, it is equally difficult to imagine how Defendant Ferguson's interests could have been considered when the response to Plaintiff's referral motion was filed.

Finally, Plaintiff notes that she has filed a timely notice of *negligence* claims, pursuant to the Maryland Tort Claims Act, *MD Code,* State Govt. Art., § 12-107(a) ("MTCA"), to assert an alternative theory that the harms she suffered were the proximate result of negligent supervision and retention that allowed subordinate employees to engage in tortious interference with Plaintiff's economic relations. The MTCA allows recovery of up to $200,000 per incident. What rational defendant facing potential personal liability would not jump at a chance to negotiate a settlement by invoking the MTCA?  But can counsel for the State agree to such a resolution without satisfying herself that there is a substantial probability that a jury trial would conclude with the State being assessed damages for wrongs committed by individual State employees and officials?  Does the Attorney General owe a higher loyalty to the State?

The federal district court for the Eastern District of Virginia, confronted with a considerably more complicated scenario than that presented by the instant case, granted a disqualification motion and left open the possibility of a complete disqualification of defendants' counsel in a wrongful death case after finding that a labyrinth of conflicting factual inferences had developed.  *See*, *Sanford v. Virginia*, 687 F. Supp. 2d 591 (E.D.Va. 2009):

> As provided in Note [19] to Rule 1.7 [of the Virginia State Bar Rule of Professional Conduct] , **"when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent." In this case, neither of these counsel were in position to request a waiver because, for the reasons set forth fully above, neither reasonably could have believed that, under the circumstances of this case, they could represent all of the defendants whom they undertook to represent.**

[Emphasis supplied.]   *Id.* at 605.  The court (Payne, J) noted further:

> [I]t is appropriate to leave that prospect [of complete disqualification] open and to allow for discussion and further assessment of that issue after each defendant is separately advised by counsel not laboring under conflicts.

*Id.* at 606.

Here, Plaintiff seeks to act *preemptively* – to the extent necessary to place this case on a footing where all of the parties can act in their own best interest.

Undersigned counsel is directing today to Defendants' counsel a communication in the nature of a settlement overture that includes a more particularized discussion of the conflict issue and Plaintiff's view of the peripheral and inconclusive nature of the argument presented in support of Defendants' pending motion, and a renewed urging that immediate mediation be considered, but on terms that obviate the conflict of interests described herein.

**B. Plaintiff's renewed request to stay determination of Defendants' pending motion.**

Plaintiff submits that in the present posture of the instant case, given particularly that Defendants' counsel has *not* said her clients would actually *refuse* to participate in mediation in good faith, it would not be a productive use of the court's time to proceed to determine Defendants' pending motion until or unless all reasonable efforts to mediate have failed. And in the event of such a failure, a better, and far less demanding use of the court's time, Plaintiff submits, would be a Rule 42(a)(2) dismissal without prejudice of the federal claims – to free the parties from the necessity of battling over the preclusive effect, *vel non,* of a determination on the merits – and an election to decline supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(c).[5]

---

[5] Sec. 1367(c) would allow this court to decline to exercise supplemental jurisdiction of a State-law claim upon a finding that:

(1) the claim raises a novel or complex issue of State law,

This would allow an adjudication on the true merits of issues of substantial public importance.[6] Obviously Plaintiff's position would be that the State-law claims arise from a separable controversy and thus would not be barred by claim-preclusion or *res judicata*. Plaintiff submits further that the efforts invested in marshaling arguments in support of Defendants' pending motion can a negotiating tool in mediation, as well. But surely the most important consideration is the extent to which determination of the merits of Defendants' pending motion would move this entire controversy toward resolution.

**WHEREFORE,** Plaintiff prays the following relief:

    1. That Defendants' present counsel be directed to inform the individual Defendants herein, and also Angela Naylor and Lavon Grant, as putative Defendants, that they and each of them should consult separate and independent counsel as to the existence, *vel non*, of a conflict of interests that may militate against representation by the Office of the Attorney General of Maryland;

---

    (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

    (3) the district court has dismissed all claims over which it has original jurisdiction, or

    (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

    [6] The instant case has morphed into more of a post-mortem examination of the actions and omissions of individual public officials who now are largely absent from the scene. Five of the seven individuals named as Defendants in the now-superseded amended complaint are no longer in the positions they occupied at the time of their alleged wrongs, and one was already retired when the instant action was filed.

2. That Defendants' present counsel be directed to inform the court within a reasonable time whether the conflict of interests described herein has been resolved, and, if the conflict is resolved, whether the conflict is resolved for purposes of mediation or continued litigation, or both;

3. Upon resolution to the court's satisfaction of any conflict of interests with regard to representation of the Defendants, that Defendants be directed to respond, jointly or severally, to Plaintiff's motion for referral of the instant action for mediation, pursuant to Local Rule 607;

4. That determination of Defendants' pending motion to dismiss the second amended complaint or for summary judgment be stayed pending Defendants' nonconflicted response to Plaintiff's motion for referral for mediation;

5. In the event the parties cannot agree unanimously to mediation, that the court will decide, after an expedited briefing, whether to refer the instant action for mediation;

6. If the instant action is not referred for mediation, that Plaintiff be afforded five court days in which to submit a response to Defendants' pending motion to dismiss the second amended complaint of for summary judgment.

DATE: January 20, 2015.

/s/ GERARDINE M. DELAMBO,
Attorney for Plaintiff
7005 Deepdene Road
Baltimore, MD 21210
717-433-1132
sparky4242@comcast.net

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of January, 2015, the foregoing Motion to Disallow Defendants' response to Plaintiff's motion for referral for mediation and renewed motion to stay

determination of Defendants' motion to dismiss second amended complaint or for summary judgment was served electronically upon Defendant's counsel, Michele J. McDonald, Assistant Attorney General, at mmcdonald@oag.state.md.us.

/s/ GERARDINE M. DELAMBO