## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

**KIM K. SUMNER,**

    **Plaintiff,**

    **v.**                   **CIVIL ACTION NO. 1:13-cv-00539-JRG**

**MARYLAND JUDICIARY /
DISTRICT COURT OF
MARYLAND,**
*et al.,*

    **Defendants.**

### oOo

### PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISALLOW DEFENDANTS' OPPOSITION TO REFERRAL FOR MEDIATION AND FOR STAY

Plaintiff, Kim K. Sumner, by undersigned counsel, submits the following points and authorities as a reply in support of her motion to disallow – based upon an obvious conflict of interest militating against common representation of all present and putative Defendants – Defendants' opposition to Plaintiff's motion for referral of the instant case for mediation.

**A. Recent background.**

Plaintiff's motion for referral (ECF 97) followed a *joint* request for mediation (ECF 55, filed July 7, 2014), and evidently the sole basis of Defendants' opposition to Plaintiff's motion for referral is their contention that mediation should be deferred until a

determination of their motion to dismiss or for summary judgment.  Significantly, in their

opposition to Plaintiff's referral motion, Defendants evidently do not contend that

determination of their pending motion would dispose of the entire controversy.  Nor do

Defendants dispute Plaintiff's view that her principal claims await filing in the State

court.[1]  Against this backdrop Plaintiff moved to "disallow" Defendants' opposition to

her motion for referral to mediation, on the ground that representation of all current

Defendants and the "putative" Defendants who would be named in the contemplated

litigation in State court is impermissibly conflictled.

  Plaintiff's inclusion of the putative State Defendants in the conflict scenario was

based on the obvious fact that successful mediation would likely result in a global

---

[1] Maryland jurisprudence offers significant advantages to civil rights claimants; among them: (1) the Court of Appeals of Maryland has firmly rejected the *Harlow* qualified immunity doctrine, *Ritchie v. Donnelly*, 324 Md. 344 (1991), and, unlike the federal anti-discrimination statutes, the Maryland statutory prohibition against employment discrimination and retaliation allows State officials, employees, and "units" to be sued, *Maryland Code,* State Gov't. Art. 10-902; (2) the standard of proof for a claim of employment discrimination or retaliation is whether the claimant's protected status or activity was a "motivating factor", rather than a determinative, "but-for" factor, *Gasper v. Ruffin Hotel Corp. of Md.*, 183 Md.App. 211, 221-222 (Md.Ct.Spec.App. 2008); (3) it seems likely that a Maryland court would recognize as supporting a viable claim of constructive discharge a factual scenario in which an employer was aware of but failed to curb coworker harassment rising to intolerability, even in the absence of a showing that the employer intended to end the subject employment, *see, Manikhi v. Mass Transmit Administration,* 360 Md. 333, 356-57 (Md. 2000) (pleading of hostile environment claim found viable on basis of supervisors' failure to investigate and stop coworker's sexual harassment), which is to contrasted with the "deliberateness" standard – that viable constructive discharge claim requires showing that employer intended that subject employment would be ended – urged by Defendants in their motion to dismiss the amended complaint, supporting memorandum (ECF 63-1) at 25.  Also, in State court, Plaintiff would be spared the burden of meeting the *Twombly-Eqbal* pleading standard: not a single appellate decision of the Maryland courts has endorsed that standard.

settlement.  Indeed, Defendants would profess even greater incredulity if Plaintiff had

failed to anticipate that mediation would dispose of the contemplated State- law claims[2]

as well as those actually pled herein.  Hence the mention of putative Defendants.  Finally,

as Plaintiff advised the court in ECF 101, she tendered to Defendants' counsel on or

about February 9 (2015) a detailed settlement demand.

## B.  A scorecard.

What Defendants have *not* said in their oppositions to Plaintiff's referral and

"disallowance" motions: Defendants have *not* said they would *refuse"* to participate in

mediation.   Defendants have not said determination of their motion to dismiss or for

summary judgment would be determinative of the entire controversy.  Defendants have

not denied that, as asserted in a letter submitted by by undersigned counsel to the MCCR,

their counsel interviewed individuals identified in an aborted notice of depositions to be

conducted by Plaintiff and was informed that Angela Naylor – a Defendant named in the

amended complaint but not in the second amended complaint, and an anticipated

---

[2] A not necessarily exhaustive listing of the contemplated State-law claims includes the retaliation and constructive discharge claims now before the Maryland Commission on Civil Rights, in which all of the individuals named in the amended complaint filed herein are named as respondents; negligent hiring, training, supervision, and retention claims, brought pursuant to the Maryland Tort Claims Act ("MTCA"), against all of the Defendants named in the amended complaint; State constitutional claims against the individual Defendants named in ithe amended complaint for violations of Plaintiff's due process, equal protection, free speech, and liberty rights; common law tort claims of tortious interference, defamation, fraudulent and negligent misrepresentation.

Defendant in the contemplated State complaint – admitted that she had been "directed to isolate" Plaintiff.

Similarly, Defendants do not deny that their counsel prevented by undersigned counsel from conducting *ex parte* interviews of individuals clearly outside of the scope of the prohibition of Rule 4.2 of the Maryland Lawyers Rules of Professional Conduct.  Nor have Defendants made any attempt to explain how – or to cite legal authorities support their counsel's insistence that – the Attorney General represents "all" State employees, contrary to the provisions of *Maryland Code*, State Govt.  Art., § 12-304.

Similarly, Defendants have not attempted the reconcile the conflict between the interest of the State in avoiding vicarious liability for the actions of its personnel, and the interest of those personnel in avoiding personal liability for their assertedly malicious or grossly negligently actions and omissions that assertedly occurred outside the scope of their State employment.

## C. The conflict of interest

Here is the considered judgment of the Supreme Court of New Jersey concerning the "potential conflict" arising from common representation of government units and their officers and/or employees:

> In the event that a municipal attorney represents co-defendants in a § 1983 action involving possible conflicts of interests, the administration of justice could be affected. **To that end the attorney will be required to alert the defendants at the earliest opportunity that the case may present problems in terms of joint representation. The attorney will also be *208 charged with bringing conflicts of interests matters to the**

**attention of the court, which should take steps to assure that notice of any potential conflict of interests is provided to affected litigants and that the ethics problem is resolved satisfactorily and made a matter of record.** *See Dunton v. County of Suffolk,* 729 F.2d 903 (2d Cir.1984); *Manganella v. Keyes,* 613 F.Supp. 795, 799 (D.Conn.1985); see also *State v. Belluci,* 81 N.J. 531, 410 A.2d 666 (1980) (trial court is obligated to protect defendant's rights to effective assistance of counsel and when multiple representation is involved, situation must be explored on record both to ensure that defendant is aware of potential hazards and to secure proper waiver). In that way lawyers will be encouraged to act reasonably and responsibly, the essential interests of clients will be protected, and the interests of justice will be secured.

[Emphasis supplied.]   *In the Matter of the Petition for Review of Opinion 552 of the Advisory Committee on Professional Ethics,* 102 N.J. 194 (N.J.S.Ct. 1986).  The above-quoted excerpt is from an opinion of the court issued in response to the Committee's recommendation of a *per se* prohibition against such common representation.        *Id.*

In *Dunton v. County of Suffolk,* 729 F.2d 903 (2d. Cir. 1984), the court concluded that joint representation of a government unit and its employee, a police officer, constituted such a serious violation of the police officer's rights that a judgment adverse to the officer was vacated, and, pursuant to an amendment entered *sua sponte,* the case was remanded for a new trial of the claims against the officer.  The key point in the court's reasoning was that the officer could have escaped liability for punitive damages – for assaulting and battering another police officer who was believed to have taken liberties with the defendant officer's wife – if the attorney representing both the officer and the municipal employer had contended that the officer acted within the scope of his

employment rather than as an "irate husband", but that would have implicated a municipal policy or practice and thus imputed liability to the government defendant.

Here is the *Dunton* court's reasoning:

After *Monell [v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), holding that "municipalities can be held liable under section 1983 for employees' actions taken pursuant to municipal policy")] the interests of a municipality and its employee as defendants in a section 1983 action are in conflict. *See Van Ooteghem v. Gray,* 628 F.2d 488, 495 n. 7 (5th Cir.1980), *aff'd in part, vacated in part on other grounds,* 654 F.2d 304 (5th Cir.1981) (en banc) (per curiam), *cert. denied,* 455 U.S. 909, 102 S.Ct. 1255, 71 L.Ed.2d 447 (1982). A municipality may avoid liability by showing that the employee was not acting within the scope of his official duties, because his unofficial actions would not be pursuant to municipal policy. The employee, by contrast, may partially or completely avoid liability by showing that he was acting within the scope of his official duties. If he can show that his actions were pursuant to an official policy, he can at least shift part of his liability to the municipality. If he is successful in asserting a good faith immunity defense, the municipality may be wholly liable because it cannot assert the good faith immunity of its employees as a defense to a section 1983 action. *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

**Because of the imminent threat of a serious conflict, disqualification would have been appropriate here even before any proceedings began.** *See Shadid v. Jackson,* 521 F.Supp. 87, 88–90 (E.D.Tex.1981) (granting motion to disqualify in virtually identical case because of "high potential for conflicting loyalties"). *Cf. Armstrong v. McAlpin,* 625 F.2d 433, 444–46 (2d Cir.1980) (en banc) (disqualification appropriate when conflict will taint a trial by affecting attorney's presentation of a case), *vacated on other grounds,* 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981). This conflict surfaced when the County Attorney stated that Pfeiffer was not acting under color of state law but rather as an "irate husband." This was a good defense for the county, which eventually was dismissed from the action. However, it was not in the best interest of Pfeiffer, who was ultimately found liable in his individual capacity. Pfeiffer's failure to object to the multiple representation before or during trial did not constitute a

waiver. As a layman, he could not be expected to appreciate his need to prove a good faith defense. Furthermore, he was never advised that his **\*908** counsel would take positions directly contrary to his interest.

The County Attorney's multiple representation in this case was inconsistent with his professional obligation to Officer Pfeiffer. *See Hafter v. Farkas,* 498 F.2d 587, 589 (2d Cir.1974). It was also inconsistent with Canons 5 and 9 of the ABA Code of Professional Responsibility.[3] A violation of Canons 5 and 9 of the Code, **which call for exercising independent judgment on behalf of a client and avoiding any appearance of impropriety, provides ample grounds for disqualifying an attorney.** *Board of Education v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979). * * *

**Where a conflict is serious and disqualification might be warranted, the district court is under a duty to ensure that the client fully appreciates his situation.** This Court has stated that "[w]hen a potential or actual conflict of interest situation arises, it is the court's duty to ensure that the attorney's client, so involved, is fully aware of the nature of the conflict and understands the potential threat to the protection of his interests." *In re Taylor,* 567 F.2d 1183, 1191 (2d Cir.1977).

**\*909** There are at least two reasons why a court should satisfy itself that no conflict exists or at least provide notice to the affected party if one does. First, a court is under a continuing obligation to supervise the members of its Bar. *E.g., In re Taylor,* 567 F.2d at 1191; *see Musicus v. Westinghouse Electric Corp.,* 621 F.2d 742, 744 (5th Cir.1980) (per curiam) (district court obligated to take measures against unethical conduct occurring in proceedings before it). Second, trial courts have a duty "to exercise that degree of control required by the facts and circumstances of each case to assure the litigants of a fair trial." *Koufakis v. Carvel,* 425 F.2d 892, 900–01 (2d Cir.1970); *see* ABA Code of Judicial Conduct, Canon 3(A)(4). When a litigant's statutorily appointed counsel is acting against the litigant's interests because of a conflict that the litigant has not been informed of and cannot be expected to understand on his own, the litigant is not receiving a fair trial. *Cf. Wood v. Georgia,* 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981) (divided loyalties of counsel may create due process violation).

In holding that the trial court had a duty to inform Pfeiffer of the conflict, we in no way excuse the conduct of the other attorneys here. Attorneys are officers of the court, *Clark v. United States,* 289 U.S. 1, 12, 53 S.Ct. 465,

468, 77 L.Ed. 993 (1933), and are obligated to adhere to all disciplinary rules and to report incidents of which they have unprivileged knowledge involving violations of a disciplinary rule. ABA Code of Professional Responsibility, DR 1–102(A),1–103(A); *see In re Walker,* 87 A.D.2d 555, 560, 448 N.Y.S.2d 474, 479 (1st Dep't 1982) (as officers of court, attorneys required to notify parties and court of error in court order). The County Attorney had to know of the serious conflict his multiple representation created, *see, e.g.,* App. at 1163, and knew or should have known that he could not fulfill his ethical obligations to the county without seriously undercutting Pfeiffer's legal position. The plaintiff's attorney should also have been aware of the problem and should have called it to the attention of the court. *See Estates Theatres, Inc. v. Columbia Pictures Industries, Inc.,* 345 F.Supp. 93, 98 (S.D.N.Y.1972) ("[T]hose attorneys representing other parties to the litigation were obligated to report relevant facts [regarding conflict of interest of opponent's attorney] to the Court ....") (citing DR 1–102).

Neither do we believe that Pfeiffer waived his objections to multiple representation by failing to object before or during trial.[5] The letter to Pfeiffer only said that there was a possibility of punitive damages, personal liability or counterclaims, and only suggested that Pfeiffer contact outside counsel. It did not say anything about the most serious conflict, that the County Attorney would take a basic position throughout the litigation which was adverse to Pfeiffer's interest. *See* App. at 1083–84 (Affidavit of R. Pfeiffer). Pfeiffer presumably knew little or nothing about the law of attorney conflicts and could not be expected to discern the nature of the conflict. He would naturally rely on his attorney to protect him. *See Wood v. Georgia,* 450 U.S. at 265 n. 5, 101 S.Ct. at 1100 n. 5 (lawyer on whom conflict-of-interest charge focuses is unlikely to concede that his actions were improper).

* * *

The district court acknowledged that there was a conflict in Pfeiffer's representation but denied the motion for a new trial in the mistaken belief that the conflict was not prejudicial. We do not agree. If Pfeiffer's first trial had been fair, he might have escaped liability altogether. **The county had agreed to indemnify Pfeiffer for compensatory damages**. App. at 1160. * * * Pfeiffer did not receive the fair trial **\*910** to which he was entitled. *See Turner v. Gilbreath,* 3 Kan.App.2d 613, 599 P.2d 323 (1979) (reversing trial court's failure to grant new trial); *see also Jedwabny v. Philadelphia Transportation Co.,* 390 Pa. 231, 135 A.2d 252 (1957) (affirming trial

court's decision to grant new trial), *cert. denied,* 355 U.S. 966, 78 S.Ct. 557, 2 L.Ed.2d 541 (1958); *In re Estate of Richard,* 4 Kan.App.2d 26, 602 P.2d 122 (1979) (violation of Code of Professional Responsibility that prevents a fair trial constitutes reversible error).

The conflict of interest not only prejudiced Pfeiffer, it may also have resulted in an improper benefit to the municipal defendants. The claim that Pfeiffer acted under color of state law was never presented to the jury in the trial below. If Pfeiffer had the opportunity to contend that he did act under color of state law but was immune from liability based on good faith actions within the scope of his duties, Suffolk County or the Police Department may still have been found liable under section 1983. While Dunton did not cross-appeal on this issue, this Court may consider questions of law not raised by the parties in order to prevent injustice. *See Hormel v. Helvering,* 312 U.S. 552, 556–57, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941). * * *

[Emphasis supplied.] *Id., 907-909.*

The foregoing decision was amended *sua sponte,* as follows:

We amend our earlier opinion by deleting the last two paragraphs of section II, 729 F.2d at 910, and substitute the following therefor:

> Accordingly, we vacate the judgment against Robert Pfeiffer and remand the assault and battery claim against him to the district court for further proceedings.

748 F.2d 69, 71 (2d Cir. 1984).

Other courts have granted employees' requests to be provided representation separately from the representation of their municipal employers. *See*, *e.g.*, *Miller v. Alagna*, 138 F.Supp.2d 1252 (C.D.CA 2000); *Ladalia v. City of New York*, 1993 WL 217145 (E.D.NY 1993). Still other courts have recognized that this inherent conflict can be resolved when the government employer provides indemnification of its employee.

*See,* Minneapolis Police Officers Fed. v. City of *Minneapolis,* 488 N.W.2d 817 (MN Ct.App. 1992).

Although the analogy between the instant case and the factual scenario in *Dunton* is not perfect, it is sufficient to provide guidance here. In the instant case, the State is exposed to liability on Plaintiff's Title VII claim and the MTCA claims that have been noticed to the Treasurer but have not yet to be presented in the State court. If the State is shown to have provided adequate preventative and remedial measures, and, further, that there was no "tangible employment action" by Defendant Ferguson as a supervisor, then it may escape Title VII liability. If the actions of the individual Defendants are shown to have been outside of the scope of their employment, malicious, or grossly negligent, the State may avoid MTCA liability. But in that event, the individuals face personal liability. Thus the individuals have a substantial incentive to show that the proffered preventative and remedial measures were *not* adequate – so that therefore the State would be liable for the asserted Title VII violation – and that they acted without the scope of their employment, and without malice or gross negligence, thus triggering the State's MTCA liability.

The liability, *vel non*, of Defendant Ferguson, who was found by the Office of Fair Practices ("OFP") to have engaged in the sexual harassment of Plaintiff and punished for this wrong, presents a severe conflict. How could actions *found by the State to have constituted sexual harassment* meet any of the criteria that must be satisfied in order for

the Attorney General to represent Defendant Ferguson?  And by agreeing to represent

Defendant Ferguson, the Attorney General also is subjecting the State to potential MTCA

liability.  By agreeing to represent Defendant Ferguson, the Attorney General must be

deemed to have conducted the investigation mandated by State Govt. Art. 12-304(b)[3] and

found that Defendant Ferguson was acting within the scope of his "public duties" when

he sexually harassed Plaintiff , and that he did so without malice – i.e., without

knowledge that he was violating the rights of Plaintiff – and without gross negligence.

Thus it is understandable that Defendants make no attempt to respond substantively to

Plaintiff's expression of concern, but instead fault Plaintiff's assertion of the obvious as

lacking a foundation.

**Conclusion.**

Plaintiff submits that the conflict so manifest here requires intervention if

Defendants and the Attorney General do not act voluntarily, and immediately.

---

[3]  Sec. 12-304(b) provides as follows:

(b) Exceptions. --
   (1) The Attorney General shall decline to represent a State officer or State
employee if, on the basis of the investigation, the Attorney General finds that:
      (i) the officer or employee was not acting within the scope of employment of
the officer or employee;
      (ii) the act or omission was malicious; or

      (iii) the act or omission was grossly negligent.
* * *

Accordingly, the Defendants' opposition to Plaintiff's motion for referral for mediation should be disallowed until the conflict is resolved.

Date:  <u>February 23, 2015.</u>

/s/ GERARDINE M. DELAMBO,
  Attorney for Plaintiff
Bar No. 28175
705 Deepdene Road
Baltimore, MD 21210
410-433-1132; 443-617-0674 (fax)
<u>sparky4242@comcast.net</u>

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this <u>24th</u> day of February, 2014, a copy of the foregoing Reply was served electronically upon Defendant's counsel, Michele J. McDonald, Assistant Attorney General, at mmcdonald@oag.state.md.us.


/s/ GERARDINE M. DELAMBO